Felix ACEVEDO, Plaintiff,

v.

**BOOKBINDERS AND MACHINE OPER-
ATORS LOCAL NO. 25 EDITION
BOOKBINDERS OF NEW YORK, INC.,**
and James F. Moore, President, Defend-
ants.

United States District Court
S. D. New York.
June 16, 1961.

Gene Crescenzi, New York City, for plaintiff.

John J. Corrigan, New York City, for defendants.

RYAN, Chief Judge.

This suit filed by a member of defendant local labor union under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S. C.A. § 401 et seq., comes to us for trial upon stipulated facts. Plaintiff alleges that he is a member of Local 25 and that, by reason of the fact that he is called a member of the Class B group of the local, he is denied the right to vote for the President, Vice-President, Secretary-Treasurer, certain of the Executive Board members and other officers of the local union.

It appears that defendant maintains pursuant to provisions of its Constitution and by-laws two separate groupings of membership: Class A, consisting of Journeymen, Artisans, Craftsmen and Apprentices; and Class B, consisting of semi-skilled and unskilled workers. Plaintiff is one of the Class B group.

Each group of the local membership votes separately to elect specific officers and shop stewards; each group also meets separately and keeps minutes of its own group membership meetings.

On October 7, 1960, Class B group nominated candidates for the officers to be elected by that group: Second Vice President, Recording Secretary, five Executive Board Members and a Sergeant at Arms. The election of these officers took place on November 4, 1960 by the Class B members; plaintiff voted at that time. The Class A members did not participate in these nominations or elections.

The nomination of officers to be elected only by the Class A group (President, First Vice President, Treasurer-Secretary, etc.) was held on October 15, 1960, with the election scheduled for November 18, 1960.

It is further stipulated that both classes of members participated in contract negotiations with the employer association, but that each class meets separately to consider or ratify collective bargaining contracts with respect to matters affecting the respective class. An additional distinction between classes is found in the fact that Class A members pay higher initiation fees and membership dues than are required from Class B members.

On the eve of the election, November 17, 1960, plaintiff filed this suit and his complaint praying that the election be enjoined and by an application to the Court for an order to show cause sought to restrain the holding of the election. Neither the complaint nor an order to show cause was served on defendant at the time; defendant's counsel at Judge Bicks' oral direction was summoned to

chambers for a hearing on this informal application to restrain the election.

It was stated by plaintiff's counsel at the hearing then held that plaintiff had told his counsel that he and other members of his category "have brought this to the attention of the union and they have not gotten the relief that they demanded." It was defendant's position that the "Class B" members had held an election on November 4, 1960, at which plaintiff had voted, and that their remedy, if any, lay not in an injunction of an imminent election but rather in complaint to the Secretary of Labor, who had the duty to investigate and in proper circumstances could even set aside an election. It was at this hearing that defendant and its attorney were first informed that this suit had been filed.

Because there were 1200 members expected to vote the next day and because it was impracticable to notify them in time that the election would not take place, it was suggested by the Court and agreed by counsel to let the election proceed as scheduled, to have the results impounded and have the incumbent officers continue to act until a decision on the matter. This was done; the election was held and the voting result sealed and filed with the Clerk of this Court, where it has remained. It was specifically stated by defendant's counsel and by the Court that, in the event of a trial, defendant would have a right to raise all available defenses including a challenge to the jurisdiction of this Court.

Plaintiff's counsel stated to the Court that he had read "both sides of the statute" (i. e. Title I—the Bill of Rights section, and Title IV, the Election section) and that the Class B members were claiming a substantive right in anticipation of its being denied them. "This is our last chance to claim this right before it is denied. After tomorrow, if the election is in, we can go to the Labor Board and say, 'Look what they did to me.'"

Thereafter and on December 9, 1960, defendant moved to strike the complaint for failure to name and serve defendant and for failure to sign the complaint,

urging in support of his motion that plaintiff would still have a remedy under Section 401(e) of Title IV of the Act by complaint to the Secretary of Labor who is charged with the investigation of complaints of this nature. Plaintiff was given leave to serve an amended complaint, which was served on January 6, 1961.

By answer filed on January 16, 1961, defendant again pleaded as a defense that the relief, if any, to which plaintiff might be entitled was within the province of the Secretary of Labor under Sections 401 and 402 of the Act, and that plaintiff had failed to exhaust his administrative remedies as required by Section 101(a) (4).

The pertinent statutes here are the so-called "Bill of Rights" Title I, Section 101(a) (1) and (4), and Section 102, 29 U.S.C.A. §§ 411(a) (1) and (4), and 412, and the Elections provisions of Title IV, Section 401(e), 29 U.S.C.A. § 481(e).

The "Bill of rights" provisions of which plaintiff claims he was deprived by action of the union provide:

"Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in the organization's constitution and bylaws." Section 101(a) (1).

This supplements provisions governing "Terms of Office and election procedures—Officers of national or international * * * organizations; manner of election", which plaintiff also claims to have been violated, reading:

"In any election required by this section which is to be held by secret ballot, a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be

a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. * * * Each member in good standing shall be entitled to one vote. * * *". Sec. 401(e).

The jurisdiction of this Court and plaintiff's right to maintain a suit is provided for by Section 102 of the Act:

"Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

It is, however, limited and conditioned by the provisions of Section 101(4) of the Act:

"No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: * * *."

Before reaching the question of this Court's jurisdiction, looking for a moment at the merits of plaintiff's claim, we are persuaded from the legislative history of the "Bill of Rights" provision that while a union may set up procedural and even substantive conditions or restrictions on the members' right to vote, it may not do so indefinitely or arbitrarily so as to establish a permanent special class of membership not entitled to an equal vote; and that this right is further assured and made more concrete by the more specific provision of Section 401(e) which plainly says: "Each member in good standing shall be entitled to one vote" (good standing not to be affected even by default in the payment of dues). Ruling of Secretary of Labor, Section 452.10, 29 C.F.R. 1960 Supp.; Labor Reform Act, A. Cox, Mich. L.Rev. Vol. 58, pp. 819, 834; Sen.Rep. No. 187, Adm. & Cong.News, p. 2338.

This does not mean that it would be unreasonable for a labor organization such as the defendant local, whose membership has traditionally had craft and artisan distinctions, to conduct the business of representing employees of differing skills by dividing them into separate classes of membership—skilled and unskilled, etc. It does mean, however, that such distinctions may not indefinitely effect a discrimination in the right of a member to exercise the right given to all other members in the choice and election of those who will represent his interests. Dealing with the reasonableness of a requirement of membership of six months to one year apprenticeship, the Secretary of Labor has ruled that, "while the right to vote may thus be deferred within reasonable limits, a union may not create special classes of non-voting members." Section 452.10, 29 C.F.R. p. 239, 60 Supp.

There is no question of deferral here; there is a permanent denial of the right to vote for some of the officers so long

as one is a member of Class B (Section 51, International General Laws). It is not a question of temporary membership in that class, as apprentices (who are in Class A); nor even of limited membership under the guise of a so-called "provisional membership" (Cf. Ragland v. United Mine Workers of America, D.C.N.D.Ala.1960, 188 F.Supp. 131). Class B members are full fledged members under the statute in a class reserved for unskilled and semi-skilled workers (Section 1, Art. I of the International Constitution). We think the disqualification practiced is manifestly unreasonable and operates to deprive a large segment of the local of proper representation and voice in the matters which vitally affect their material and economic interests.

But the complaint of these Class B members cannot be entertained at this time by the Court for two reasons: 1) as a condition to their exercising their right to sue, they are required by the Union's Constitution to first seek relief from the Union before invoking federal aid; 2) after exhausting their Union remedies, the seeking of post election relief to set aside the election as invalid, which is the only relief that could now be dispensed, lies in the hands of the Secretary of Labor. Section 402, 29 U.S.C.A. § 482.

We find that Section 13 of the General Law of the International Brotherhood provides that:

"Any member of a local union feeling that injustice has been done him by his union, or any candidate for admission whose application has been rejected, may appeal his case in accordance with the constitutional provisions; provided, it shall be mandatory on all members that the following avenues of relief be exhausted before seeking relief in their case from any other source."

This and subsequent provisions (Sections 14 through 21) set forth the procedures required to be followed on such appeals.

The aggrieved member may not only appeal to the President of the International but to the Executive Council and, from there, to the International Brotherhood, which judgment shall be final. All appeals from the local are to be submitted within one year; and the right to appeal to the International is assured to every member of a local union in good standing. Pending decision by the International, the decision of the Executive Council shall stand, as shall the decision of the local pending decision of the Executive Council.

As far as the time limit imposed by the procedures set forth, one cannot say that they are so unreasonable as to make some decision within the statutory four month period of Section 101(a) (4) or the three month period of Section 402(a) (2) impossible. We do not know how often the Executive Council or the International convenes—aside from the fact that appeal to the latter must be perfected within 30 days after decision and that all appeals from locals are outlawed after one year—but we certainly are not justified in dispensing with resort to these procedures—at least as far as a four month period or three month period would take plaintiff—on a finding of futility. Cf. Sheridan v. United Brotherhood of Carpenters and Joiners, Local 626, D.C.Del., 194 F.Supp. 664; Johnson v. Local Union No. 58, International Brotherhood of Electrical Workers, D.C., 181 F.Supp. 734.

While it seems that the local in setting up these classes and even in differentiating between the classes on question of voice or vote was acting in pursuance of the International's Constitution and within its own Constitution and by-laws [1], we should not presume that

---

1. Section 1 of Article 1 of the International Constitution provides for two large groupings of membership in the craft—those who have special work requiring knowledge or skill in a separate operation of the industry; and those workers who are grouped and described as "semi-skilled and unskilled Class B" workers. There follows the specific provision that

"In the event that Class B workers are taken into any regularly chartered Local Union the question of voice or vote of

faced with a complaint based on a law enacted since the establishment of its Constitution and by-laws, the local would ignore the provisions of such law (and the International suffer it to do so) without at least investigating the complaint and attempting to comply if, in its opinion, such compliance is absent and required in the particular instance. Certainly the opportunity to do so should not be taken away from it, nor should we decide that, because the Constitution or By-Laws may make the defendant's action permissible, it would be futile as a matter of law to require plaintiff to seek relief from that body under present law. Smith v. General Truck Drivers, etc., D.C., 181 F.Supp. 14; Sheridan v. United Brotherhood of Carpenters and Joiners Local, supra; but see Johnson v. Local Union No. 58, International Brotherhood of Electrical Workers, supra.[2]

It is better calculated to carry out the Congressional policy by permitting labor organizations to establish democratic procedures through self-government and self-determination rather than by judicial mandate; this means that "not only that interference with internal affairs of unions [to] be kept to the necessary minimum, but also that wherever possible we should encourage unions to bring about their own reforms before we resort to Government sanction." S. 505, 86th Congr. 1st Sess. (1959).

The other factor which should guide the Court is the conservation of judicial resources in the reasonable expectation and hope that corrective action within the Union will render the complaint moot. Detroy v. American Guild of Variety Artists, 2 Cir., 1961, 286 F.2d 75.

We do not have a problem arising from an absolute requirement under the stat-

the Class B members on *purely bindery* matters, or the voice or vote of regular bindery members on matters pertaining to Class B workers shall be within the autonomy of the Local Union."

The possible creation and need of a separate local organization for the "semi-skilled and unskilled Class B workers" is recognized and authorized by this Section 1, Article 1 of the International Constitution wherein it is further provided that

"It is further provided that under this jurisdiction when in the judgment of the Executive Council it is expedient, a Class B charter can be issued to box, novelty, semi-skilled and unskilled workers, but in no instance shall a Class B membership card be issued to any member employed as a recognized journeyman, journey woman or apprentice classification."

That the rights of the Class B members are limited is definitely stated and acknowledged by Section 51 of the International General Laws which states, among other matters, that members of the local union are

"entitled to all of the privileges and benefits of membership, *according to their status*. Local unions are required to enforce this law to the letter."

However, the "Standing Rules" which follow Article VI of the local's by-laws, includes under the title "Semi-skilled and unskilled Branch" provisions that

"The officers of this branch shall consist of a second Vice President, Record-

ing Secretary and five (5) additional members, all of whom shall be the Executive Board also a Sergeant-at-Arms. This Executive Board shall select two (2) of its members to sit on the Executive Board of Local No. 25 with voice and vote in matters pertaining to their branch."

It is further provided that

"This Board and Branch shall be under the supervision of the Executive Board of Local No. 25. All Class B members are subject to all the foregoing Articles of this Constitution and By-Laws."

2. The defendant International established the Class B in defendant local as far back as 1939; and then gave the local autonomy with respect to Class B officers; the state of affairs complained of has now existed for well over 20 years; the law under which plaintiff seeks relief became effective September 14, 1959. Although plaintiff voted in the election limited to Class B members of which he complains on November 4, 1960 and had knowledge of it and of the candidates at least two weeks prior to that time and of the November 18 election about 3 weeks prior, he waited until the night before the election to obtain injunctive relief without even having served defendant with the complaint or with an order to show cause to stay the election. Cf. Ragland v. United Mine Workers of America, supra.

ute to exhaust internal remedies; it is a situation calling rather for the exercise of discretion guided by the above principles. We would not be justified in now withholding judicial action, if the internal remedies available to plaintiff were uncertain or unknown to him, or if the violation of federal law were clear and the injury immediate and irremediable, such as was found in Detroy, supra. We cannot find that any one of these elements is present here; as Chief Judge Lumbard pointed out the absence of any one might be sufficient for withholding judicial relief (Detroy, supra, at page 81).

▆ Moreover, since injunctive relief should be equitable above all else, it must always be a question of balancing and of choosing the remedy. In the Detroy case, aside from the presence of the three elements enumerated by the Court, the relief was a simple direction to the union to remove plaintiff's name from a blacklist —a comparatively innocuous move affecting one single individual—compared with the upheaval of a long followed practice affecting several thousand members, which would flow from judicial action, assuming we had the power to order an injunction.

▆ In the event the union's decision is against plaintiff and a refusal to apply the legislative mandates, plaintiff still has his judicial remedy; in the meantime he suffers but a temporary continuance of deprivation of his full voting rights; this is not irreparable harm which demands immediate judicial intervention prior to affording the union opportunity to right the wrong.

▆ This brings us to the second ground for dismissal of the complaint and that is that the election has been held; that until declared invalid it is presumed valid (Section 402(a) (2), 29 U.S.C.A. § 482(a) (2); and that the only relief now available to plaintiff, assuming he is entitled to it, is the setting aside of the election and the holding of a new

one. This type of relief, it seems clear from the statute, is to be sought only by the Secretary of Labor and is exclusive.

"Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to election prior to the conduct thereof shall not be affected by the provision of this Title. The remedy provided by this title for challenging an election already conducted shall be exclusive." Section 403, 29 U.S.C.A. § 483.

Although there appears to be some overlapping between "The Bill of Rights" and the "Elections" provisions, viz. in the right to nominate candidates and to vote in elections, it seems (although there is no judicial precedent) that while under Title I a member has the right to enjoin violations of the Act in general either before the alleged violation takes place or perhaps to enjoin further violations, where the remedy sought or available is specific such as it must be here to set aside an election, necessitating the holding of another, the action cannot be maintained by the individual, but only by the Secretary of Labor who alone under the statute may supervise elections. Virginia Law Review, Vol. 46, p. 195; Georgetown Law Journal, Vol. 48, pp. 257, 266; Yale Law Journal, Vol. 70, p. 175; Michigan Law Review, Vol. 58, p. 819.[3]

Particularly in a statute of this type and under the circumstances presented to us, we should be much loath to assert a very doubtful jurisdiction when plaintiff after an adverse decision from the union has an ample and probably more efficient remedy by invoking the aid of the official charged with the administration of the labor laws, and where plaintiff has had plenty of time prior to the holding of the election to prosecute the suit in his own right.

The complaint is dismissed without costs. Because we have found that this Court is without jurisdiction to entertain

3. Note: this was recognized by plaintiff's counsel at the hearing on the motion to enjoin the election; see S. M. page 9 and page 310 in this opinion.

this suit at this time, the results of the election which were impounded by order of the Court are directed to be released to defendant's counsel who is to deliver them to the union official in charge of opening and counting the ballots. It is so ordered and final judgment is so entered.