Nicholas MAMULA

v.

**UNITED STEELWORKERS OF AMERI-CA, an Unincorporated Labor Union, and I. W. Abel, International Secretary-Treasurer Thereof, Appellants.**

No. 13782.

United States Court of Appeals Third Circuit.

Argued March 9, 1962.

Decided June 5, 1962.

See, also, 205 F.Supp. 915.

David E. Feller, Washington, D. C., James Craig Kuhn, Jr., Pittsburgh, Pa. (Elliot Bredhoff, Jerry D. Anker, Michael H. Gottesman, Washington, D. C., Ernest G. Nassar, and Wilner, Wilner & Kuhn, Pittsburgh, Pa., on the brief), for appellants.

Harry Alan Sherman, Pittsburgh, Pa., for appellee.

S. G. Lippman and Tim L. Bornstein, Washington, D. C., for Retail Clerks International Association, AFL-CIO, as amicus curiae.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

The plaintiff, Nicholas Mamula, commenced this action under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C.A. § 401 et seq., alleging that certain of the rights guaranteed to him thereunder were violated by defendants, United Steelworkers of America, AFL-CIO

("union"), and its Secretary-Treasurer, I. W. Abel. At all times relevant, plaintiff was president of Local Union 1211 of District 20 of the union. The union is divided into a number of geographically defined "districts". Its constitution provides that each local shall have the right to nominate a candidate for district director, and nomination by any five locals within a district shall entitle the nominee to be placed on the district ballot. The union's constitution, however, does not prescribe the procedure for selecting nominees. This is left to the locals.

Nomination meetings were held by locals in District 20 in November and December of 1960. Plaintiff's name was not placed on the ballot for district director, although by letter his counsel requested the union to do so. Attached to the letter were affidavits executed by members of six different locals within District 20. Each one indicated that plaintiff's name had been placed in nomination for district director at each of the respective local's nomination meeting. The record showed, however, that plaintiff was defeated. Before the actual election for district director was held, plaintiff filed a complaint in the district court, alleging that defendants had denied him an opportunity to submit his name for candidacy to the membership and that the union's constitution and bylaws fail to prescribe procedures to be followed in selecting a nominee. This, he said, constituted a violation of Title I, §§ 101(a) (1) (2) (4) and 102, 29 U.S.C.A. §§ 411(a) (1) (2) (4) and 412 of the LMRDA, and requested a temporary injunction or restraining order enjoining the election of a district director, and that the court direct the union to place his name on the district ballot. The district court denied the request, and the election was held. The matter came on for full hearing, and thereafter the district court entered an order setting the election aside, under Title I, § 101(a) (1) of the LMRDA, 29 U.S.C.A. § 411(a) (1).[1] It is from this order that defendants have appealed. More particularly, the district court found that the union's constitution was "lacking and deficient in failing to set forth nominating procedures for its International officers in order that members rights under Section 101 will be protected." Some of the particular inadequacies listed by the district court were that the union hall, where voting was conducted, had a capacity of 600, while Local 1211 had a membership in excess of 11,000. Further, that the nomination and voting took place at one meeting, although at the time set for the meeting one-third of the membership was at work and unable to attend.

The defendants first contend that Title IV, §§ 401–403 of the LMRDA, 29 U.S.C.A. §§ 481–483, and not Title I, governs the procedures for nominating and electing officers and sets forth exclusive remedies for violation of these procedures, and that under Title IV the plaintiff lacks standing to bring this action. A reading of Titles I and IV in conjunction with the legislative history of the LMRDA, and consideration of the pertinent decisions that have been rendered, compel us to conclude that this contention is correct.

Title I guarantees union members an equal opportunity to vote, while Title IV prescribes the procedures that are to be followed in nominating and electing union officers. It also, just as clearly, prescribes the remedies available to a union member where these procedures are not followed. The present Title I was not in th LMRDA when it left Committee.[2] Title I, frequently re-

---

1. Section 101 in pertinent part reads as follows:

"(a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meet-

ings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C.A. § 411 (a) (1).

2. S. 1555. 86th Cong., 1st Sess.1959.

ferred to as the bill of rights section, was introduced as an amendment to the LMRDA by Senator McClellan who, during debate, referred to § 101(a) (1), saying:

"The select committee found time and again the denial of the right to vote, the denial of the right to work, the denial of the right to have a voice, the denial of the basic human rights on which our very freedom was founded." [3]

The desire to protect the fundamental right of a union member to vote was again apparent when Senator McClellan told the Senate:

"* * * [O]bviously we give the union members some rights in the bill, because we insert in the bill a criminal penalty in the case of those who violate the rights given the union members. I simply propose that we define and describe those rights, which are basic, and which every citizen of the country is entitled to. I believe we should elucidate on this point." [4]

Earlier he referred to it in debate and said:

"If this bill should be enacted into law, it would bring to the conduct of union affairs and to union members the reality of some of the freedoms from oppression that we enjoy as citizens by virtue of the Constitution of the United States, which incidentally does not make an exception for union members." [5]

Before he offered the amendment containing the bill of rights section, Senator McClellan introduced S. 1137.[6] The proposed bill contained a bill of rights provision which expressly directed that nominations and elections be conducted in accordance with section 302 thereof. That section, in turn, was in substance similar to the provisions of Title IV of the LMRDA.

On February 6, 1959, Senator Mundt introduced S. 1002, which was directed specifically at providing democratic procedures in the election of officers. That bill contained detailed provisions dealing with union nominations and elections, and was considered by the Senate side by side with the McClellan bill of rights amendment, and was not viewed as being incompatible with it. The Mundt bill did not pass the Senate. Thereafter, the McClellan amendment was replaced by the so-called Kuchel substitute that passed the Senate.[7] Debate on the substitute made it clear that it was in the main a reenactment of the McClellan amendment, which is now Title I.[8]

Title IV, on the other hand, deals comprehensively with the procedure for nominating and electing union officials. It would be inappropriate to set it out in extenso here, so we shall summarize its provisions. Section 401 prescribes the frequency of elections for certain enumerated officers, distinguishing between local and international officers, and requires use of a secret ballot. It goes on to require that balloting shall be by members in good standing or at a convention of delegates selected by ballot.[9] Further, a union is under a duty to comply with all reasonable requests by candidates for union office to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members. Also, every bona fide candidate has the right, which he can exercise

3. 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, p. 1103. U.S.Govt. Printing Office, 1959.

4. Id. at p. 1106.

5. Id. at p. 1098.

6. S. 1137, 86th Cong., 1st Sess.1959.

7. 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, p. 1239.

8. Id. at pp. 1229–1239.

9. 29 U.S.C.A. § 481(a) & (b).

once within a 30-day period prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization. The union is under an obligation to provide adequate safeguards to insure a fair election, including the right of any candidate to have an observer at the polls and at the counting of ballots.[10] Reasonable opportunities must be given members to nominate, and every member in good standing shall be eligible to be a candidate and to hold office, and shall have the right to vote for or otherwise support the candidate or candidates of his choice without being subject to penalty or discipline. Every member is entitled to advance notice of an election. Detailed procedures are provided for retaining ballots and other records, and the election must be conducted in accordance with the bylaws and constitution of the union, except to the extent that they are inconsistent with Title IV.[11] The credentials of delegates to a convention that elects officers, as well as the minutes of the convention and other records of the convention pertaining to the election of officers, shall be retained for one year.[12] The items for which union funds may be spent in union elections is limited to providing notices and factual statements of issues not involving candidates and other expenses necessary for the holding of an election. Title IV further specifically sets forth in § 402, 29 U.S.C.A. § 482, that violations of the provisions outlined above can only be enforced by the Secretary of Labor once an election is held. The pertinent parts of the provisions read this way:

"A member of a labor organization—

"(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

"(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide." 29 U.S.C.A. § 482(a).

Subsection (b) requires the Secretary of Labor to investigate complaints and to commence an action in an appropriate federal court to set aside any election where he has reason to believe that Title IV has been violated. The court has power to set aside the election and direct that a new one be held under supervision of the Secretary of Labor. The Secretary, after conducting the election, must certify to the court the names of persons elected and the court shall then enter a decree declaring that such persons have been elected. If the proceeding is for the removal of officers, the Secretary must certify the election results and the court shall enter an appropriate decree declaring whether such officers have been removed.[13] Title IV goes on in § 403, 29 U.S.C.A. § 483, to provide that: "The remedy provided by this title for challenging an election already conducted shall be exclusive." Furthermore, where an individual union member has standing to bring suit under Title IV, Congress clearly so indicated. Section 401(c) guarantees candidates for union office the right to inspect certain union membership lists, and upon failure of union officials to make such lists available, any bona fide candidate has standing to bring

10. Id. at § 481(c).

11. Id. at § 481(e).

12. Id. at § 481(f).

13. Id. at § 482(c).

suit in a district court of the United States.

The bill introduced by Senator Kennedy, and known as the Kennedy-Ervin bill, contained the present remedy.[14] The committee report accompanying the bill categorically stated that post election actions to enforce the nomination and election provisions could only be initiated in the courts by the Secretary of Labor.[15] At the same time that the Kennedy-Ervin bill was under consideration, an administration bill was introduced.[16] That bill expressly provided for enforcement by both the Secretary and individual union members. The Kennedy-Ervin bill, and not the administration bill, was passed by the Senate. When the LMRDA reached the House, Title IV was changed to include a provision that read as follows:

"§ 402(a). A member of a labor organization—

"(1) who is aggrieved by any violation of section 401, and

"(2) who (A) has exhausted the reasonable remedies available under the constitution and bylaws of such organization and of any national or international labor organization with which such organization is affiliated, or (B) has diligently pursued such available remedies without receiving a final decision within six calendar months after their being invoked, may bring a civil action against such labor organization *in any district court of the United States * * *.*"[17]

That provision was removed, however, by the conference committee, prompting Senator Kennedy to say, while reporting back to the Senate:

"The provisions requiring fair and periodic elections are taken from the Senate bill. The Landrum-Griffin bill would have substituted a variety of suits by individual union members for enforcement by the Secretary of Labor. The House conferees receded from this position and the Senate provision was restored."[18]

Several recent district court decisions that have discussed the interplay between Titles I and IV, and the plaintiff's standing to bring this action, are in accord with our conclusion. They are Colpo v. Highway Truck Drivers and Helpers, Local 107, 201 F.Supp. 307 (D.Del.1961); Gammon v. International Ass'n of Machinists, 199 F.Supp. 433 (N.D.Ga.1961); Acevedo v. Bookbinders and Machine Operators Local 25, 196 F.Supp. 308 (S.D.N.Y.1961); Johnson v. San Diego Waiters & Bartenders Union Local 500, 190 F.Supp. 444 (S.D.Calif.1961); Myers v. International Union of Operating Engineers, 40 CCH Labor Cases ¶ 66,436 (E.D.Mich.1960); Byrd v. Archer, 38 CCH Labor Cases ¶ 66,083 (S.D.Calif. 1959).[19]

---

14. S. 1555, 86th Cong., 1st Sess.1959.

15. S.Rep. No. 187, 1 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, pp. 397, 417, U.S.Code Cong. & Adm.News 1959, p. 2318 et seq.

16. S. 748, 86th Cong., 1st Sess.1959.

17. 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, p. 1697.

18. Id. at p. 1433.

19. The Commissioner of the Bureau of Labor-Management Reports of the Department of Labor in a letter to plaintiff's counsel said:

"While individual union members may have the right under state law to bring a private action to enforce the constitution and bylaws of the organization with respect to elections prior to the conduct thereof, once the election has been held the remedy provided by Section 402 becomes exclusive to the extent that such members' action challenges the conduct of the election. * * * After the election has been held, the member would have to follow the procedures prescribed by Section 402 i. e. he must first invoke the remedies available under the organization's constitution and bylaws and if he fails to obtain satisfaction within the

Even if this were an action within the ambit of § 101(a) (1) of Title I, 29 U.S.C.A. § 411(a) (1), it is clear that the plaintiff lacks standing to bring it. The enforcement provision for Title I is § 102, 29 U.S.C.A. § 412, which provides that: "Any person whose rights secured by the provisions of this title have been infringed * * * may bring a civil action in the district court of the United States for * * * relief * *." There is nothing in the record showing any of plaintiff's rights as a union member set forth in Title I were violated by defendants. The facts point the other way, for he participated in the meeting, was its presiding officer, and had ample opportunity to nominate candidates. There is nothing in the provisions of Title I or its legislative history[20] that would give plaintiff standing as a candidate to bring this action. That is borne out by the district courts that have considered the question. Gammon v. International Ass'n of Machinists, supra; Johnson v. San Diego Waiters Union Local 500, supra; Byrd v. Archer, supra. Furthermore, plaintiff does not have standing to enforce the rights of other union members. Johnson v. Stevenson, 170 F.2d 108 (C.A.5, 1948), cert. denied, 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069 (1949). On frequent occasions, the Supreme Court has held that an individual does not have standing to litigate the rights of another. E. g., McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Cronin v. Adams, 192 U.S. 108, 24 S.Ct. 219, 48 L.Ed. 365 (1904).

The judgment of the district court will be reversed and the cause remanded with directions that the complaint be dismissed.

union he may then complain to the Secretary within the time prescribed by 402 (a). * * * But the Secretary cannot proceed with any investigation of the election under Section 402 until such time as your clients see fit to file complaints with him which meet the conditions set forth in Section 402(a) of the Act."

20. The legislative history on this point can be found in 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, pp. 1232–1233; 105 Cong.Rec. 10095 (86th Cong., 1st Sess. 1959).