George P. SHULTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

LOCAL 1291, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, Appellee.

No. 18148.

United States Court of Appeals, Third Circuit.

Argued May 7, 1970.

Decided July 16, 1970.

Patricia S. Baptiste, Dept. of Justice, Washington, D. C. (William D. Ruckelshaus, Asst. Atty. Gen., Louis C. Bechtle, U. S. Atty., Robert V. Zener, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Martin J. Vigderman, Freedman, Borowsky & Lorry, Philadelphia, Pa. (Abraham E. Freedman, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This action was brought by the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act[1] to declare invalid an election in which Abdullah Ahmed Bey, the com-

---

1. 29 U.S.C. §§ 481 et seq.

plaining union member,[2] was defeated for the presidency of Local 1291, International Longshoremen's Association, and to require a new election supervised by the Secretary. Section 401(e) of the Act[3] provides that "every member in good standing shall be eligible to be a candidate and to hold office (subject * * * to reasonable qualifications uniformly imposed) * * *." The suit charges, inter alia, that Rule 3(c) (3) of the Local's by-laws violated § 401(e) by imposing racial qualifications for office.[4] Rule 3(c) (3) provides:

> "In accordance with tradition heretofore observed, the president shall be of the colored race, vice president, white, recording secretary, white, financial secretary, colored, ass't financial secretary, white, 4 business agents equally proportioned, 3 trustees (auditors) 1 white & 2 colored, 2 sergeants at arms, 1 colored and 1 white."

The district court, relying on our decision in Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 372 F.2d 86 (3 Cir.1966), originally dismissed the action as moot because a later election had meantime intervened. When the Supreme Court reversed our decision in Local 153 (389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968)), we remanded this case, which was then before us on appeal, to the district court for further proceedings. On remand the district court after a hearing dismissed the action without reaching the merits[5] on the ground that Bey

had not exhausted his internal union remedies as required by § 402(a) of the Act (29 U.S.C. § 482(a)).

## I.

Bey, a candidate nominated for the presidency of the Local, was defeated by Richard I. Askew in an election held on December 10, 1963. On December 17, 1963, he filed a complaint with the president of the Local claiming, inter alia,[6] that the election was invalid because of Rule 3(c) (3).[7]

A hearing was held at which Bey appeared before the Local's Executive Board. The Board advised him on February 3, 1964, that it rejected his complaint and then referred it to the membership of the Local. Bey appeared before the membership, which voted to sustain the Board's decision. The date of the membership action does not appear, but on February 8, 1964, within a few days of the meeting, Bey sent a letter to the president of the Philadelphia District Council, which he intended as an appeal from the decision of the Local. He asked the District Council if it decided his appeal against him to "forward" the appeal to the Atlantic Coast District of the union, evidently the next higher unit of the I.L.A.

Bey heard nothing from the District Council concerning his appeal, and therefore on March 26, 1964, made his complaint to the Department of Labor pursuant to § 402(a) of the Act, which authorizes the filing of a complaint with

---

2. Section 402(b) (29 U.S.C. § 482(b) ) makes the complaint of a member a prerequisite to the commencement of an action by the Secretary.

3. 29 U.S.C. § 481(e).

4. Although the district court made no mention of them, the Secretary also made claims that the union did not provide adequate safeguards to protect the secrecy of the ballot, that candidates were denied the right to have observers at the polls, and that candidates were denied the right to inspect a list of names and addresses of the Local's members.

5. 299 F.Supp. 1125 (E.D.Pa.1969).

6. Bey also asserted other claims, such as failure to protect the secrecy of the ballot, miscounting of the ballots, recognition of ineligible candidates, denial of the right to inspect membership lists, improper elimination of candidates, and refusal to allow observers at the polls.

7. Bey, who asserts he is a white Arab, had been nominated and allowed to run as a candidate for president because it was assumed that he was "of the colored race" and hence qualified for the presidency under the Rule. This raises the question whether he could have been prejudiced by the Rule if it was not invoked against him.

the Secretary of Labor for any alleged violations of § 401. On April 10, 1964, he received a letter from Joseph S. Kane, secretary of the District Council, stating that the president of the District Council had not informed him of Bey's letter of appeal, of which he had learned the day before from the Department of Labor. He offered Bey an immediate hearing before the District Council, but Bey made no reply. On May 25, 1964, the Secretary of Labor instituted this action.

The district court held that Bey had not properly invoked the remedies available to him under the union's constitution for a number of reasons: (1) He should have either (a) appealed directly to the highest union authority, by-passing all intermediate appeals, in order to obtain a final decision before the expiration of the three-month period, or (b) he should not have remained quiescent during the District Council's inaction but should have appealed its inaction to the International's Executive Council in order to obtain its final decision within three months; and (2) his appeal to the District Council was ineffective because he sent it to the president instead of the secretary.

## II.

The statute authorizes a union member to file a complaint with the Secretary within one calendar month after he has either (a) exhausted the remedies available under the constitution and by-laws of the union, or (2) invoked the available remedies without obtaining a final decision within three calendar months.[8]

It is clear that Bey did not exhaust all his union remedies as required under the first alternative. The full process of appeal under the constitution and by-laws would have taken him to the I.L.A. Executive Council and perhaps even to the Convention of the union.[9] The question therefore is whether he invoked the available remedies without obtaining a final decision within three calendar months and thus came within the second alternative.

■■ 1. The two alternative provisions of § 402(a) illustrate the distinction between requirements of exhaustion and invocation of remedies. The first alternative is one of direct exhaustion of the remedies available under the union's constitution and by-laws. The second alternative, however, requires only the

**8.** Section 402(a) of the Act reads:
"A member of a labor organization—
"(1) who has exhausted the remedies available under the constitution and by-laws of such organization and of any parent body, or
"(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers).
* * *" 29 U.S.C. § 482(a).

**9.** Section 1 of Article XIX of the Constitution of the union provides:
"Section 1. Appeals may be taken from any decision made under Article XVIII and from any action, failure to act or decision in the exercise of the original or appellate jurisdiction pro-

vided for in this Constitution:
"(a) Of an officer of a Local Union, to the Executive Board of such Local Union;
"(b) Of the Executive Board of a Local Union, to a membership meeting of such Local Union, whose decision shall be made by a majority of those present and voting on the question;
"(c) Of a membership meeting of a Local Union, to the District Council (if any) with which it is affiliated, or (if not affiliated with a District Council) to the District Organization;
"(d) Of any District Council, officer or District Council Executive Board, to the District organization, whose decision under this clause and under clause (c) shall be made by a majority of the delegates present and voting on the question at a meeting thereof;
"(e) Of any District Organization or International officer, to the Executive Council;
"(f) Of the Executive Council to the Convention."

invocation of available remedies and authorizes resort to the Secretary of Labor, regardless of exhaustion, if the remedies invoked have not yielded a final decision within three calendar months. Both requirements are intended to afford the union an opportunity to hear the complaint of its member and to redress his grievance before he may resort to governmental intervention. Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 472, 88 S.Ct. 643 (1968); Wirtz v. Local Union No. 125, Int'l, etc. Laborers' Union of N. Amer., 389 U.S. 477, 484, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968). The statute thus fosters union self-government and seeks to "accustom members to utilizing remedies available within their own organization." Wirtz v. Local Union No. 125, Int'l, etc. Laborers' Union of N. Amer., 389 U.S. at 484, 88 S.Ct. at 642. The preliminary resort to union remedies has the additional advantage of sharpening issues before they reach the courts. Detroy v. American Guild of Variety Artists, 286 F.2d 75, 79 (2 Cir.), cert. denied 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). Congress has thus afforded unions an opportunity for the intra-union disposition of the grievances of members before they can invoke the aid of the Secretary of Labor

and through him the process of the courts.

Bey made his complaint to the union on December 17, 1963, seven days after the election. It was almost two months, however, before he was notified on February 3, 1964, of the adverse decision of the Local's Executive Board. When shortly thereafter the Local's membership affirmed the Executive Board's decision, Bey immediately appealed on February 8, 1964, although under the constitution [10] he had 30 days in which to act. If he had waited to appeal until the end of the authorized time the three-month period fixed by the Act would have expired in little more than a week.[11]

Although Bey did not take advantage of the 30-day period for appeal to the District Council, the union now claims, as the district court held, that he should have appealed from the District Council's failure to act to the Executive Council of the International [12] or alternatively should have by-passed the District Council and taken his appeal directly to the Executive Council of the International [13] in order to seek to obtain a final decision within three months.

■■■ This contention confuses the requirement under subsection (1) of §

10. Section 3 of Article XIX of the Constitution provides:
  "Section 3. All appeals shall be in writing, shall contain a brief statement of the facts and the grounds for the appeal and shall be filed with the secretary of the body to which they are addressed within thirty days, or such longer period as such body may permit, after the rendition of the decision from which the appeal is taken. The secretary with whom the appeal is filed shall promptly transmit copies thereof, together with a notice of the date of hearing thereon, which shall be held not less than five days from the date of the notice, to the parties to the appeal. * * *"

11. The three calendar month period prescribed by the Act began with Bey's letter of complaint of December 17, 1963, and expired on March 17, 1964.

12. An appeal from a failure to act is authorized by Article XIX, § 1 of the union's constitution. See supra, n. 9.

13. The bypassing of subordinate appellate bodies is authorized by Article XIX, § 2 of the union's constitution, which provides:
  "Section 2. An appellate body specified in Section 1 of this Article may hear and determine an appeal filed with it notwithstanding the fact that such appeal has not first been submitted to or decided by a subordinate appellate body pursuant to the provisions of Section 1 of this Article, in which event the subordinate appellate body shall not act upon the appeal; provided that no appeal shall be taken to the Convention unless it has first been submitted for decision to the Executive Council."

402(a) of exhausting all remedies available regardless of the time required to do so with the alternative authorization under subsection (2) to complain to the Secretary if the union fails to render a final decision within three calendar months. Bey had no responsibility for the time requirements which the union itself created or for the time consumed by the union agencies in acting on his appeal.[14] No burden rested on him to compel the union officials to render a decision within the three-month period or to bypass any of the stages of appeal and to telescope them in order that an ultimate decision by the highest appellate organ of the union might be reached within three months. Under the statute it is enough that he invoked the union's authorized procedure for appeal, and if the appeal was still pending after three calendar months elapsed he was entitled to file his complaint with the Secretary of Labor within one month thereafter.[15]

■ If a union desires the opportunity to render its ultimate appellate judgment on a member's complaint before he may turn to the Secretary of Labor under subsection (2) of § 402(a), it is the union which must provide an appellate timetable which produces a final judgment within the three calendar month period. It cannot rely upon its own stately procedure for appeal or its own delay in deciding various stages of appeal to destroy the right of a member to resort to the Secretary of Labor under the alternative provision of subsection (2).

■ The union points to Harris v. International Longshoremen's Association, Local 1291, 321 F.2d 801, 806–807

(3 Cir.1963), an earlier case in which Bey was involved in a controversy with the local, to show that he was familiar with the union's procedures and that his action here indicates that he preferred the judicial forum. He may well have preferred a judicial forum. Nevertheless, he invoked the procedures established by the union and if no final decision was reached within three months it was due to the multi-tiered union appellate process and the failure of the District Council to act on his appeal.[16] Under the statute he had the right to complain to the Secretary of Labor when the process he invoked remained pending at the expiration of three calendar months.

■ Similarly, Bey's failure to respond to the union's belated offer of a hearing after he had sought relief through the Secretary of Labor did not begin anew the running of the statutory three-month period which had already expired. It could not retrospectively affect his right to call on the Secretary to exercise his power and invoke the aid of the courts.

■ 2. Finally, the union contends that Bey did not in fact invoke the remedies available under its constitution because he misdirected his appeal to the District Council by sending it to the president instead of the secretary.

It is true that the constitution of the union provides that appeals to the District Council shall be addressed to the secretary.[17] It is not decisive, however, that Bey misdirected his letter of appeal.

Bey's letter went to the president of the District Council, its highest official, and put the Council as a body on notice

---

14. See Giordani v. Upholsterers Int'l. Union of N. Amer., 403 F.2d 85, 88–89 (2 Cir. 1968) (intra-union exhaustion under § 101 of the Act, 29 U.S.C. § 411); Wirtz v. American Guild of Variety Artists, 267 F.Supp. 527, 531–533 (S.D.N.Y. 1967).

15. See Wirtz v. American Guild of Variety Artists, supra n. 14; Jacques v. Local 1418, I.L.A., 246 F.Supp. 857, 858–859 (E.D.La.1965), aff'd 404 F.2d 703 (5 Cir.

1968) (intra-union exhaustion under § 101 of the Act, 29 U.S.C. § 411).

16. See Jacques v. Local 1418, I.L.A., supra n. 15. Cf. McCraw v. United Ass'n of Journey. & App. of Plumbing, etc., 216 F.Supp. 655, 660–661 (E.D.Tenn.1963), aff'd 341 F.2d 705 (6 Cir. 1965) (intra-union exhaustion under § 101 of the Act, 29 U.S.C. § 411).

17. See supra, n. 10.

of the appeal. It was sufficient to satisfy the provision of the constitution.[18] Moreover, there is no dispute that on the same day Bey sent copies of this letter of appeal to the president of the Atlantic Coast District and to the president of the International,[19] and a separate letter to the president of the Atlantic Coast District expressing his desire to seek intra-union relief and requesting that he be furnished with any information necessary to "complete and resolve" the appeal. He received no answers to any of these letters.

Bey sought to explain why he directed his letter to the president instead of the secretary of the District Council. He said that he did so because the secretary had participated as a member of the Local's Executive Board in its adverse decision on his complaint. We need not decide the sufficiency of this explanation since the president of the District Council received Bey's timely letter of appeal. Members of a union, however well informed of its procedure for appeal, deal not with an outside agency whose interests are hostile to theirs but with their own union which should seek to reach a disposition of their grievances on the merits rather than on procedural technicalities. The District Council received the notice through its president and the appeal therefore was as fully effective as it would have been if the notice had been sent to the secretary. Courts of justice, which are much more formal in their procedure, have often given effect to a misdirected notice of appeal, even though it relates to their jurisdiction.[20]

We conclude that Bey did invoke his available union remedies without obtaining a final decision within three calendar months and therefore was entitled to make his complaint to the Department of Labor as provided in § 402 of the Act. The district court, therefore, erred in dismissing the Secretary's complaint without reaching the merits.

The order of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

---

18. See Jacques v. Local 1418, I.L.A., supra n. 15; Ferger v. Local 483 of Int'l Ass'n of Bridge, etc., Wkrs., 238 F.Supp. 1016, 1021 (D.N.J.1964), aff'd per curiam 342 F.2d 430 (3 Cir. 1965) (intra-union exhaustion under § 101 of the Act, 29 U.S.C. § 411).

19. Bey also testified that he had sent a copy to Joseph M. Kane, who was the corresponding secretary of Local 1291, although Kane denied receiving such a letter. The District Council had someone else as its secretary, although he bore a similar name: Joseph S. Kane.

20. See Frace v. Russell, 341 F.2d 901 (3 Cir.), cert. denied 382 U.S. 863, 86 S.Ct. 127, 15 L.Ed.2d 101 (1965); Richey v. Wilkins, 335 F.2d 1, 4–5 (2 Cir. 1964); Halfen v. United States, 324 F.2d 52, 54 (10 Cir. 1963); Riffle v. United States, 299 F.2d 802 (5 Cir. 1962); Yanow v. Weyerhaeuser Steamship Co., 274 F.2d 274, 282–283 (9 Cir. 1959), cert. denied 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); Gerringer v. United States, 93 U.S.App.D.C. 403, 213 F.2d 346 (1954). See generally, Reconstruction Finance Corp. v. Prudence Securities Advisory Group, 311 U.S. 579, 582–583, 61 S.Ct. 331, 85 L.Ed. 364 (1941); 3A Barron and Holtzoff, Federal Practice and Procedure § 1555 (Supp.1969); 9 Moore, Federal Practice ¶ 73.10 at 3201–02 (1969).