George P. **SHULTZ**, Secretary of Labor, United States Department of Labor

v.

**LOCAL 1291, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION.**

Civ. A. No. 35849.

United States District Court, E. D. Pennsylvania.

Jan. 6, 1972.

Martin J. Vidgerman, of Freedman, Borowsky & Lorry, Philadelphia, Pa., for defendant.

Louis C. Bechtle, U. S. Atty., Louis Weiner, Regional Sol., U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

## OPINION AND ORDER

BODY, District Judge.

Presently before this Court, on remand from the Court of Appeals, Shultz v. Local 1291, I.L.A., 429 F.2d 592 (3d Cir. 1970), is this action instituted by the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481 et seq., to set aside an election in which Abdullah Ahmed Bey, the complaining union member,[1] was defeated for the presidency of Local 1291, International Longshoremen's Association [I.L.A.], and to require a new election supervised by the Secretary. Initially we note the change in the Office of the Secretary of Labor and on our own motion will order the caption amended to read "James Hodgson, Secretary of Labor" as the complainant here.

The procedural history of this action is quite lengthy, but we will review it now insofar as it is relevant to the matter still before us.[2]

Local 1291's by-laws include the following provision [Rule 3(c) (3) ], which is at issue here:

"In accordance with tradition heretofore observed, the President shall be of the colored race, Vice President, white, Recording Secretary, white, Financial Secretary, colored, Asst. Financial Secretary, white, 4 Business Agents equally proportioned, 3 Trustees (Auditors), 1 white & 2 colored, 2 Sergeants at Arms, 1 colored and 1 white."

Since its inception in 1932, Local 1291 has had approximately a fifty-fifty split in membership between blacks and whites.

Abdullah Ahmed Bey, who claims to be an Arab, was nominated and ran for the presidency of the local union on December 10, 1963. He was defeated. It was apparently assumed that Bey was "colored" as Rule 3(c) (3) was not raised as a bar to Bey's presidential candidacy. Prior to this date, Bey had neither formally complained about Rule 3(c) (3) nor had he attempted to nominate any black for a white designated office, nor any white for a black designated office at the nominations on November 19, 1963. Bey testified that, but for the existence of Rule 3(c) (3), he would have nominated other persons for the office of president and lower positions. N.T. 79–83, 87–89.[3]

It is now undisputed that Bey exhausted his internal union remedies before bringing his complaint to the attention of the Secretary of Labor. Shultz v. Local 1291, I.L.A., 429 F.2d 592 (3d Cir. 1970).[4] It is no longer disputed that this action is not moot, despite the fact that the remedy sought is a setting aside of the 1963 election and that there have been intervening elections since that time. See Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 88

---

1. Bey filed his complaint about Rule 3(c) (3) originally with the president of Local 1291 on December 16, 1963.

2. The two other published opinions, which explore the history of this case more fully than we do here, are as follows: Shultz v. Local 1291, I.L.A., 429 F.2d 592 (3d Cir. 1970) ; Schultz v. Local 1291, I.L.A., 299 F.Supp. 1125 (E.D.Pa. 1969). The District Court in its prior opinion made findings of fact on which we now rely.

3. Notes of Testimony before the late Judge Allan K. Grim on November 22–24, 1965.

4. 29 U.S.C. § 482(a) makes exhaustion of internal union remedies a prerequisite to a union member seeking relief from the Secretary. Similarly, 29 U.S.C. § 482 (b) provides that the Secretary may investigate alleged irregularities and file a civil action only after a complaint of a union member has been filed with him.

S.Ct. 643, 19 L.Ed.2d 705 (1968); Shultz v. Local 1291, I.L.A., 429 F.2d 592 (3d Cir. 1970).

■ Defense counsel has suggested that this Court lacks jurisdiction of the subject matter because Bey was permitted to run for office and was not himself prejudiced by the application of Rule 3(c) (3). We disagree with this contention. The statute provides that "[A] member of a labor organization . . . may file a complaint with the Secretary . . . alleging the violation of *any* provision of section 481 . . . ." (emphasis added) 29 U.S. C. § 482(a). There is no limitation on the status of the complainant other than that he be a member of a labor organization. There is no requirement that the complaining union member must have been denied either the right to run for office himself or the right to nominate others for union office. The Supreme Court has on two occasions taken a broad view of Title IV of the Labor-Management Reporting and Disclosure Act: " . . . . the Act is not so limited [to protect(ing) the right of a union member to run for a particular office in a particular election], for Congress emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705 (1968); Wirtz v. Local 125, Laborers' International Union, 389 U.S. 477, 483, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968). Accordingly, we hold that the complaint filed by Bey with the Secretary of Labor furnished an adequate basis on which the Secretary could investigate and later bring suit to set aside the 1963 election under 29 U.S.C. § 482 (b).

29 U.S.C. § 481(e) provides:

"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof."

The basic issue in this case, briefly stated, is whether Rule 3(c) (3) is a reasonable qualification on the right of union members in good standing to be candidates in union elections and to hold office. If it is not, and if it may be said that existence of the Rule affected the outcome of the 1963 election, then this Court must void that election. We now hold that Rule 3(c) (3) is an unreasonable qualification on the right of union members to be candidates and to hold office and that the existence of the Rule can be said to have affected the outcome of the 1963 election: accordingly, we will void that election and order a new election under the supervision of the Secretary of Labor.

The language "reasonable qualifications uniformly imposed" should not be given a broad reach. Rather, whether Rule 3(c) (3) is a " 'reasonable qualification' . . . must be measured in terms of its consistency with the Act's command to unions to conduct 'free and democratic' union elections." Wirtz v. Local 6, Hotel, Motel & Club Employees Union, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). Since Rule 3(c) (3) deprives fifty percent of the members of Local 1291 from holding each office, there must be a very compelling reason why it should be upheld. See Acevedo v. Local 25, Bookbinders & Machine Operators, 196 F.Supp. 308, 311–312 (S.D.N.Y.1961).

The major difficulty we find with the racial qualifications imposed by Rule 3(c) (3) is that there is no objective re-

lationship between the eligibility qualifications and the duties of the office involved. Whether one has merit or ability or experience to hold office is immaterial if the appropriate racial characteristic is not also present. As the Supreme Court has recently stated in a related context: "A classification 'must be reasonable, not arbitrary, and must rest upon some ground or difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike'." Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).[5]

The Rule is of indefinite duration. Hence, absent a change of by-laws, a white person could never be president of the local nor could a colored person ever be vice-president. Such a permanent disbarment from union elective positions on the basis of qualifications bearing no objective relationship to the duties of office seems clearly unreasonable. See Acevedo v. Local 25, Bookbinders & Machine Operators, supra.

Defendant seeks to justify this Rule on a Civil Rights rationale. He claims that, but for this by-law, the union would slip into a segregated status with the possible development of dual segregated local unions.[6] He claims that this Rule, though somewhat distasteful, is required to maintain an integrated union, and hence fosters the cause of Civil Rights.

We feel that defendant's argument is unduly speculative. Admittedly this Rule could act as a stabilizing influence on the racial composition of the union. But, should the racial composition of persons looking for jobs as longshoremen change, it seems likely that union membership would have to reflect that change.[7] It would also seem that dual segregated union locals are no longer permissible under the Civil Rights Act of 1964 and courts have required their merger as a solution to the problem. No. 274 Musicians' Protective Union Local v. American Federation of Musicians, 329 F.Supp. 1226 (E.D.Pa.1971); United States v. I.L.A., 319 F.Supp. 737 (D.Md.1970); see United States ex rel. Mitchell v. I.L.A., 334 F.Supp. 976 (S.D. Tex.1971).[8]

It also appears that Rule 3(c) (3) amounts to an unlawful employment practice within the meaning of 42 U.S.C. § 2000e–2(c):

"It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin."

The Supreme Court, in speaking of this Act but with respect to unlawful employment practices by employers, 42 U. S.C. § 2000e–2(a), stated: "Discrimi-

---

5. *Reed* was a decision involving an arbitrary preference given to men over women in the choosing of estate administrators in Idaho. The Supreme Court held such a discrimination to amount to a denial of Equal Protection under the Fourteenth Amendment.

While it is unnecessary for us to so decide, it would appear that the question of reasonableness involves many of the same considerations as of Equal Protection. What we say with respect to reasonableness is also applicable to an Equal Protection analysis.

6. The President of Local 1291, Richard L. Askew, testified to this effect. N.T. 328–331.

7. Labor organizations may not exclude persons from membership on the basis of race. 42 U.S.C. § 2000e–2(c). Local 53, International Ass'n of Heat and Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047 (5th Cir. 1969).

8. Under 42 U.S.C. § 2000e–5(g), the District Court is invested with a large measure of discretion in modeling its decree to assure compliance with the Act. Local 53, International Ass'n of Heat and Frost Insulators and Asbestos Workers v. Vogler, supra.

**1208**

natory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification . . . . *If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited."* (Emphasis added) Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). We cannot consider as reasonable for purposes of the Labor-Management Reporting and Disclosure Act what would be considered an unlawful employment practice under the Civil Rights Act of 1964.

Lastly, we note that the terminology white and colored may operate to exclude from office persons who are considered to be of neither group, such as one Polynesian member of the union. If he were to be deemed of neither group, he would never be eligible to run for any office solely on the basis of his racial background. There appears never to have been an authoritative construction of this Rule so as to prevent this occurrence. See N.T. 94–98.

For all the above-stated reasons we are compelled to find that Rule 3(c) (3) was an unreasonable qualification on the right of Local 1291 members to be candidates and to hold office after the 1963 elections. The conclusion that there was a violation of 29 U.S.C. § 481(e) also establishes a prima facie case (which has not here been rebutted) that the violation "may have affected" the outcome of this election. Wirtz v. Local 6, Hotel, Motel & Club Employees, 391 U.S. 492, 505–508, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) and we will set aside this 1963 election under the authority of 29 U.S.C. § 482(c).