564 F.2d 657
 96 L.R.R.M. (BNA) 2818, 82 Lab.Cas. P 10,191
 Peter J. BRENNAN, Secretary of Labor, United States Department of Labor
v.
LOCAL UNION 122, AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL-CIO.
Appeal of UNITED STATES of America.
 No. 76-2417.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 6, 1977.
Decided Oct. 25, 1977.
 
 Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David W. Marston, U. S. Atty., Philadelphia, Pa., William Kanter, Eloise E. Davies, Edwin E. Huddleson, III, Attys., Dept. of Justice, Washington, D. C., for appellant.
 Alan F. Markovitz, Jerome L. Markovitz, Markovitz, Brooks & Cantor, Philadelphia, Pa., for appellee.
 Before VAN DUSEN, ADAMS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal brings before us a dispute concerning the nature of the "remedies" which must be exhausted before an employee may file a complaint with the Secretary of Labor under Title IV of the Labor Management Relations Disclosure Act of 1959 (LMRDA).[1] The complaint here contested the validity of a union by-law that requires a nomination for union office to be seconded by 25% of the members present at a nominating meeting.
 
 A.
 
 2
 On October 9, 1972, Local 122 of the Amalgamated Clothing Workers of America held an open union meeting for the purpose of nominating candidates for its November election of officers. Ms. Antonia Velasquez, who had not been slated for any position, attempted to have herself nominated from the floor as a candidate for the position of Joint Board Delegate. Her nomination received only eight seconding votes, although 150 members were present at the meeting.[2] Since the governing by-laws required that nominations be seconded by 25% of the members present at the nominating meeting, Ms. Velasquez's name was not placed on the ballot, and she was not elected at the November 1973 election.
 
 
 3
 Ms. Velasquez wrote to the Philadelphia Joint Board of the Amalgamated on December 15, 1973, instituting grievance proceedings to protest the nominating procedure. Particularly the letter challenged the 25% rule as violating the LMRDA.
 
 
 4
 The Secretary of the Joint Board, in a letter dated February 11, 1974, responded that Ms. Velasquez' objections had been considered by a committee of the board of directors of the Philadelphia Joint Board, by the board of directors itself, and by the members of the joint board as a whole, and that the grievance was denied. Further, the February 11th letter suggested that the proper course of action was for Ms. Velasquez to attempt to amend the by-laws.
 
 
 5
 By letter dated February 22, 1974, Ms. Velasquez appealed the February 11th decision to the General Executive Board of the Amalgamated Clothing Workers. After three months elapsed without response from the General Executive Board, Ms. Velasquez filed a complaint with the Secretary of Labor on April 1, 1974.
 
 
 6
 On June 1, 1974, the Secretary of Labor brought the present action to set aside the November 1973 election on the ground that the 25% seconding requirement was an unreasonable qualification on the right of candidacy and thus violative of Title IV of the LMRDA, 29 U.S.C. sec. 481(e).
 
 
 7
 Without reaching the merits of the charges brought by the Secretary, the district court dismissed the complaint on the ground that Ms. Velasquez had failed to exhaust her remedies as prescribed by the Act. The Secretary has appealed.
 
 B.
 The LMRDA, 29 U.S.C. sec. 482(a) provides:
 
 8
 (a) A member of a labor organization
 
 
 9
 (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
 
 
 10
 (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
 
 
 11
 may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title.
 
 
 12
 Local 122 contends, and the district court concluded, that in addition to the protest she in fact filed, exhaustion of Ms. Velasquez's remedies required an attempt to amend the by-law to which her objection is addressed.[3] Since no such attempt was made, the district court held, the Secretary was without power to bring this suit. While we agree that exhaustion is a necessary prerequisite to action under LMRDA Title IV, in light of the facts of this case we conclude that the by-law amendment process is not a " remedy" to which Congress has mandated resort.
 
 
 13
 Statutory construction should generally be informed both by reference to the underlying policies of Congress and by common sense. Title IV, the statute to be construed here, represents a balance between the public interest in fair and democratic union elections, on the one hand, and the importance of minimizing government encroachment upon union autonomy, on the other.[4] As one aspect of this equilibrium, Congress has determined that before the Secretary may intrude upon union election procedures, his authority must be called forth by a union member who has either exhausted his union remedies or invoked them without satisfaction for three months.
 
 
 14
 In addition to the traditional roles of exhaustion in sharpening issues for the courts[5] and conserving scarce resources allotted to enforcement,[6] the Title IV exhaustion precept serves functions specific to the LMRDA. It allows unions the opportunity to resolve complaints of unfairness without governmental intermeddling,[7] and it fosters responsive union self-government by encouraging establishment of and resort to structures for internally resolving disputes.[8]
 
 
 15
 Neither of the purposes specific to LMRDA would be significantly served by interpreting the Act as mandating an attempt to amend the by-laws in the situation before us.
 
 
 16
 Both the Philadelphia Joint Board and the Amalgamated General Board were fairly apprised of the substance of Ms. Velasquez's complaint by her use of the grievance mechanism. They thus had an opportunity to alter or to begin to alter the challenged election procedures.[9] Indeed, the Joint Board delegates to whom Ms. Velasquez's grievance was directed were in a far better position than she to generate an amendment: Ms. Velasquez's only option was to suggest that her local union sponsor an amendment, whereas the Joint Board delegates and officers were each personally empowered to bring suggested amendments before the Board. In fact, they did nothing.
 
 
 17
 We do not agree, however, with the government's contention that any notice whatsoever to union officials is sufficient to satisfy the exhaustion requirement. If reasonably-available internal channels for processing grievances have been deliberately ignored, merely bringing the matter to the union's attention does not fully vindicate the public interest in encouraging responsive self-government on the part of unions.
 
 
 18
 In this case, however, it cannot be said that Ms. Velasquez bypassed the available mechanisms for settling her dispute internally. Hers was not a vague, perfunctory notice of dissatisfaction. Rather, as well as could be expected from a lay person,[10] she detailed the ground for her grievance and submitted it through channels that were appropriate.[11] Indeed, according to the documents filed below, Ms. Velasquez's letter was treated by the Joint Board with the seriousness accorded a properly submitted grievance.
 
 
 19
 Finally, the more general goals of exhaustion are not served by requiring resort to the amendment procedure. An attempt to induce Local 122 to amend the by-laws would do little to sharpen the issues presently before this Court. And it seems unlikely from the response of the Joint Board to the grievance that any attempt to amend the by-laws by a two-thirds vote of that Board would have met with success sufficient to obviate action by the Secretary.
 
 
 20
 Under these circumstances, we conclude that when Ms. Velasquez did not pursue an attempt to introduce an amendment to the by-laws there was no failure to utilize or exhaust internal remedies sufficient to bar this action under Title IV.
 
 C.
 
 21
 Our decision is supported by the governing authorities. The leading case on exhaustion in the context of a challenge to union by-laws is Hodgson v. Local 6799, United Steelworkers of America, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). There, a union member "protested" an election on several grounds, but received no satisfaction from the union. He then filed a complaint with the Secretary of Labor, adding to his previous objections an allegation that a by-law establishing a meeting-attendance requirement as a condition of candidacy for union office was illegal. The Court first noted the "heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question."[12] It nonetheless held that the complaint presented to the union in Hodgson concerned matters "wholly unrelated to the rule" and "therefore h(e)ld that internal union remedies were not properly exhausted."[13] The implication of the Hodgson decision was that if the complaint had "clearly indicated to the union his dissatisfaction" with the by-laws, the exhaustion requirement would have been met. No mention was made of any necessity of attempting an amendment.[14] Similarly, the contention that Title IV exhaustion makes necessary an attempt to amend by-laws cannot be reconciled with our decision in Shultz v. Local 1291 Intl. Longshoremen's Assn., 429 F.2d 592 (3d Cir. 1970). There, this Court detailed the steps taken by the complainant internally to challenge the outcome of an election on the basis of a racial qualification for union office contained in local by-laws. 429 F.2d 594-95. There is no reference to any attempt to amend. Nonetheless, we held that the complainant did "invoke his available union remedies without obtaining final decision within three calendar months and therefore was entitled to make his complaint to the Department of Labor." 429 F.2d at 598.
 
 
 22
 The defendants suggest that Amalgamated Clothing Workers Rank and File v. Amalgamated Clothing Workers, 473 F.2d 1303 (3d Cir. 1973), binds us to the proposition that the amendment process is a remedy which must be exhausted before the Secretary of Labor may act upon a complaint. We do not read Rank and File to have such an effect.
 
 
 23
 In Rank and File, plaintiff, a member of the Amalgamated, brought suit under Title I of LMRDA challenging inter alia, the consistency of the by-laws at issue here with the guarantees of Title I. By the time the case reached this Court, the election in question had already occurred, and the only relief requested was a declaration that the by-law was invalid. We refused to review the Title I claim on the ground that the plaintiff had failed to exhaust available union remedies. The opinion stated:
 
 
 24
 In the instant case, there has been no showing of irreparable harm, futility of internal appeal, or a fixed union position. The appellants have presented no evidence that they ever challenged the objectionable bylaws before instituting this suit. Article XXIV of the bylaws provides what appears to be a reasonable procedure for amendment. Further, there is no evidence that the union bylaws chill free speech in union elections. For these reasons this is an appropriate case to demand internal exhaustion. Harris v. International Longshoremen's Association, Local No. 1291, 321 F.2d 801 (C.A. 3 1963).
 
 
 25
 473 F.2d at 1308.
 
 
 26
 Leaving aside the fact that Rank and File was brought under Title I rather than Title IV of the LMRDA,[15] it is distinguishable from the action before us on the basis of the relief sought. In Rank and File, the requested remedy was a declaratory judgment that the by-law violated Title I. The object of such relief could have been equally accomplished by amendment. Here, in contrast, the plaintiff requests that the courts invalidate an election, a result which an amendment could not achieve.
 
 
 27
 More importantly, however, as the district court noted, in Rank and File there was no evidence that the plaintiffs had ever challenged the by-laws. In view of the failure to discuss Hodgson and Shultz, and of the indications in the legislative history of Title I that the "remedies" contemplated were adjudicatory rather than legislative,[16] we believe that Rank and File is best understood as holding that total refusal to challenge by-laws by union procedures before resort to outside tribunals is a failure to exhaust which may bar adjudication of a claim under the LMRDA.
 
 
 28
 In the present case, as discussed above, Ms. Velasquez utilized internal procedures to challenge the by-law at issue. Even under Rank and File, therefore, we conclude that Ms. Velasquez has appropriately exhausted her available remedies.
 
 D.
 
 29
 We do not believe, however, that the case is ripe for resolution by us on the merits. The effect of the by-law in Local 122 and elsewhere[17] and the weight of the justifications which might support the reasonableness of the by-law are questions which should be analyzed in the first instance by the district court which heard the testimony in this case.[18] Its findings and conclusions will be critical to the final adjudication of this matter.
 
 
 30
 The case will accordingly be reversed and remanded for resolution on the merits.
 
 
 
 [1]
 29 U.S.C. sec. 481, et seq
 
 
 [2]
 According to the evidence, Local 122 has 2,833 members
 
 
 [3]
 According to the by-laws and testimony, although Ms. Velasquez could not herself have brought an amendment before the Joint Board, she could have moved at a meeting of her local to have the amendment brought before the board. The Joint Board was empowered to act upon amendments brought to it either by board members or local unions
 
 
 [4]
 See Hodgson v. Local 6799, United Steelworkers, 403 U.S. 333, 338-39, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971); Wirtz v. Local 153, Glass Bottle Blowers Assn., 389 U.S. 463, 470-71, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); cf. Trbovich v. United Mine Workers of America, 404 U.S. 528, 532-35, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)
 
 
 [5]
 See Shultz v. Local 1291 Internat. Longshoremen's Assn., 429 F.2d 592, 596 (3d Cir. 1970)
 
 
 [6]
 See Hodgson v. United Steelworkers, 403 U.S. 333, 339, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971)
 
 
 [7]
 "This rule preserves a maximum amount of independence and self-government by providing every international union an opportunity to correct improper local elections." S.Rep. No. 187, 86th Cong., 1st Sess., 21 (1959), 1 N.L.R.B., Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, 417 (1960); Hodgson v. United Steelworkers, supra 403 U.S. at 339-340, 91 S.Ct. 1841; Wirtz v. Bottle Blower's Assn., supra 389 U.S. at 473, 88 S.Ct. 643
 
 
 [8]
 Hodgson v. United Steelworkers, supra 403 U.S. at 340, 91 S.Ct. 1841; Wirtz v. Local 125 Laborer's Intl. Union, 389 U.S. 477, 484, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968)
 
 
 [9]
 See Hodgson v. United Steelworkers, supra 403 U.S. at 341, 91 S.Ct. at 1846 ("union member must, in some discernible fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement."); Wirtz v. Laborer's Union, supra 389 U.S. at 477, 88 S.Ct. 639 (Secretary may bring suit for violations "which the union has fair opportunity to consider and redress in connection with a member's complaint")
 
 
 [10]
 We have some concern about the procedure which Ms. Velasquez followed in waiting until a month after the election to inform the Joint Board of her objection to nominating procedures. However, we are admonished that "members should not be held to procedural niceties while seeking redress within their union, . . . ." Hodgson v. United Steelworkers, supra 403 U.S. at 341 n. 6, 91 S.Ct. at 1846. Since no explicit time limits in the by-laws have been brought to our attention regarding grievance procedures, we decline to hold that Ms. Velasquez's actions were so untimely as to foreclose the Secretary's complaint
 
 
 [11]
 Anthony Russo, the Secretary of the Philadelphia Joint Board, testified that the grievance was submitted to and considered by the Joint Board "according to the by-laws." The appeal to the General Executive Board seems to comport with Art. XII of the Amalgamated Constitution, which provides for appeals from "any action, failure to act, or decision in the exercise of original or appellate jurisdiction . . . of any joint board or general officer to the General Executive Board."
 
 
 [12]
 Hodgson v. United Steelworkers, supra 403 U.S. at 341, 91 S.Ct. at 1846
 
 
 [13]
 Id
 
 
 [14]
 Counsel have presented, and our research has uncovered, no case in which an amendment to a by-law has been suggested as a "remedy" that must be exhausted under Title IV. In contrast, courts have frequently entertained actions predicated upon by-laws that allegedly violated Title IV without mention of the possibility of amendment. E. g. Local 3489 United Steelworkers of America v. Usery, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), affirming Brennan v. Local 3489, United Steelworkers of America, 520 F.2d 516, 518 (7th Cir. 1975) ("protest" by defeated candidate constituted exhaustion; no mention of attempted amendment); Usery v. Local 1205, Amalgamated Transit Union, 545 F.2d 1300 (1st Cir. 1976) (no mention of attempt to amend); Hodgson v. Dist. 6, United Mine Workers, 474 F.2d 940, 945-46 (6th Cir. 1973) (complaint sent to executive board constituted exhaustion; no mention of attempt to amend); Wirtz v. Local 153 Glass Bottle Blowers, 405 F.2d 176 (3d Cir. 1968) on remand from 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968) (no mention of attempted amendment)
 
 
 [15]
 Defendants claim that since exhaustion under Title IV is mandatory, while under Title I it "may be required," 29 U.S.C. § 411(a)(4) (emphasis added), if an attempt to amend is necessary under Title I, it is a fortiori imperative under Title IV. However, it could equally be argued that a more stringent exhaustion requirement is appropriate in a Title I than in a Title IV proceeding. In Title IV, unions are protected from harassment by the filtering mechanism of the Secretary of Labor's exclusive power to bring suit. Title I, in contrast, allows suit by any member, and therefore might bring into play a stronger policy in favor of internal exhaustion
 
 
 [16]
 Title I itself requires exhaustion of "reasonable hearing procedures." Senator Kennedy, sponsor of the bill in the Senate, noted that Title I was not "to eliminate existing grievance procedures established by union constitutions for redress of alleged violation of their internal governing laws." Exhaustion was to involve "reasonable remedies within the organization to redress violation of (extant) union constitutional rights." 2 NLRB, Legis. Hist., supra at 1432. See id. at 1294-95 (remarks of Sen. McClellan) (exhaustion is to involve "grievance and arbitration machinery"); id. at 1666-67 (remarks of Sen. McCormack) (interest in exhaustion is interest in "exhausting appeals within the union," "right of members to decide appeals of their brother members for infractions of their governing laws;" "The doctrine of exhaustion of internal remedies has applicability only to disputes between a union and its members involving violations of (union) constitutional rights and privileges.")
 
 
 [17]
 The government contends, for example, that the 25% rule "mak(es) it virtually impossible for dissidents to be nominated" (Reply brief at 10), and alludes to the rule's "inhibiting effect in discouraging candidates from running against the administration slate." (Reply brief at 14). Both of these assertions raise factual issues appropriate for initial resolution by the trial court
 
 
 [18]
 See Singleton v. Wulff, 428 U.S. 106, 120-21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)