Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor

v.

LOCAL 1235, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, AFL–CIO, Appellant.

No. 82–5670.

United States Court of Appeals, Third Circuit.

Argued June 7, 1983.

Decided Aug. 10, 1983.

John W. O'Farrell (argued), Asst. U.S. Atty., Chief, Civ. Div., W. Hunt Dumont, U.S. Atty., Newark, N.J., for appellee.

Ernest L. Mathews, Jr. (argued), Thomas W. Gleason, Charles R. Goldburg, New York City, for appellant.

Before SEITZ, Chief Judge, SLOVITER, Circuit Judge, and POLLAK, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

The Secretary of Labor filed suit to set aside an election conducted by defendant Local 1235 on the ground that it was not conducted in accordance with the constitution and bylaws by which it was governed, in violation of section 401(e) of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 481(e)(1976).[1] The district court granted

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Section 401(e) provides:

 In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to

summary judgment for the Secretary, and ordered a new election under the supervision of the Secretary as to all contested offices. Local 1235 appeals, claiming that the Secretary's suit was barred by the failure of the election protestors to exhaust their internal union remedies in a timely fashion and that there were, at least, contested factual issues relevant to the exhaustion issue which precluded the grant of summary judgment for the Secretary. We conclude that summary judgment was inappropriate because there were contested factual questions and will remand this case to the district court for further proceedings.

## II.

Local 1235 is an affiliated local union of the International Longshoremen's Association, AFL–CIO, maintaining its principal office in Newark, New Jersey. The dispute in this case concerns the election of local officers in early 1981. The election was conducted on the following schedule: nominations were received on January 22, 1981; voting was conducted on February 19; and absentee ballots were counted and the election concluded on February 26. On February 24, representatives of twenty-one members of Local 1235 met with an attorney to obtain assistance in protesting various aspects of the election which they believed had been in violation of the Local Constitution and bylaws and the International Constitution. They provided the attorney with a copy of the International Constitution adopted in July 1975, which did not contain any specific provision governing election protests, but did contain a general appeals provision requiring that appeals be filed within 30 days after the decision from which the appeal was taken. Accordingly, on March 26, 1981, within 30 days of the conclusion of the election, the attorney filed a written protest with the Local and the International on behalf of the protestors. On April 6, the International rejected the protest as untimely, on the basis of an amendment to the International Constitution adopted in July 1979, which specifically required that protests of the election of local officers must be filed with the secretary-treasurer of the local union within 10 days after the conclusion of the election.

The protesting union members then filed a complaint with the Secretary. The Secretary concluded, after investigation, that the election had not been conducted in compliance with the Act. In July 1981 the Secretary commenced this action in the United States District Court for the District of New Jersey pursuant to section 402(b) of the LMRDA, 29 U.S.C. § 482(b),[2] charging Local 1235 with violations of section 401(e), 29 U.S.C. § 481(e). The pre-trial order enumerates ten separate violations, each one representing a noncompliance with the In-

---

the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. The votes cast by members of each local labor organization shall be counted, and the results published, separately. The election officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

**2.** Section 402(b) provides:

The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

ternational or the Local Constitution.[3] The complaint sought to have the election set aside as to all contested offices and the direction of a new election to be supervised by the Secretary.

Local 1235 moved for summary judgment on the ground that the protestors had failed to file their protest within 10 days, as required by the 1979 Constitution. The Secretary cross-moved for summary judgment on the ground that the alleged violations were uncontested. The district court, having before it a lengthy joint pre-trial order containing stipulated uncontested and contested facts, as well as other affidavits and depositions, denied Local 1235's motion and granted the motion of the Secretary. It therefore declared the February 1981 election to be void as to all contested offices and ordered a new election under the supervision of the Secretary.

Local 1235 does not in this appeal challenge the district court's finding that the Secretary had shown uncontested violations of section 401(e) and was entitled to prevail on the merits.[4] The only issue it raises is whether the court properly granted summary judgment for the Secretary in light of Local 1235's contention that the protestors failed to comply with the election protest procedure established by the 1979 Constitution.

### III.

Section 402(a) of the LMRDA, 29 U.S.C. § 482(a), provides, *inter alia,* that a member of a labor organization "who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body" may file a complaint with the Secretary alleging the violation of any provision of section 401 of the Act.[5] The Secretary is then empowered to investigate the complaint, and upon a finding of probable cause to believe that a violation has occurred, file suit on the complainant's behalf in United States District Court. LMRDA § 402(b), 29 U.S.C. § 482(b).

In this case, the district court determined that exhaustion should be excused for several reasons. First, the court stated

---

3. The violations charged were the failure to require each nominated candidate to be seconded by two members in good standing, the failure to appoint a nominations committee to take charge of the election, the failure to determine ballot positions by random drawing, the use by one winning candidate of the phrase "I.L.A. team" in his campaign literature, the failure to prevent persons in arrears in payment of dues from voting, the failure to prevent non-dues-paying retired members from voting, the failure to determine the eligibility of absentee voters, the failure to insure secret balloting at the polling site, the failure to use a double envelope system for absentee ballots, and the failure to allow candidates' observers to be present during the counting and tabulation of votes.

4. The district court found that summary judgment was appropriate on three of the grounds urged by the Secretary: (1) members in arrears in their dues had been allowed to vote in contravention of the International Constitution; (2) non-dues-paying retirees had also been permitted to vote in violation of the Constitution; and (3) the secrecy of the balloting had been compromised in violation of the requirements of the LMRDA. Although the court found that other of the alleged violations created triable issues of fact, it held that each of these three grounds provided a sufficient basis for summary judgment.

5. Section 402(a) provides in full:

(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title [section 401 of the Act] (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

This exhaustion provision, applicable to Title IV of the LMRDA which relates to elections, is distinct from the exhaustion provision applicable to Title I, which contains the Bill of Rights for union members. LMRDA § 101(a)(4), 29 U.S.C. § 411(a)(4). *See Brennan v. Local Union 122, Amalgamated Clothing Workers,* 564 F.2d 657, 662 n. 15 (3d Cir.1977).

that "[t]here is strong evidence in the record that the members of Local 1235 were never meaningfully informed of the change in the protest procedure," since neither the Constitution nor notice of the amendment had been distributed to the membership. Second, the court emphasized the uncontested fact that prior to the voting Suarez, one of the complainants, had objected to one aspect of the voting and that "[t]he union was therefore aware at an early date of a protest yet never sought to inform its members of the procedure for filing a formal complaint." Finally, the court concluded that "there is strong evidence that plaintiffs attempted to comply with the spirit of the appeals provision." Local 1235 contends that the district court erred as a matter of law in failing to apply the 10-day limitations period for election protests. It views that requirement as immutable by virtue of Congressional adoption of the exhaustion requirement in section 402(a). We believe that the district court correctly rejected this rigid view of section 402(a).

In *Hodgson v. Local Union 6799, United Steelworkers,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), the Court described the purpose of the exhaustion requirement of section 402(a) as "designed to harmonize the need to eliminate election abuses with a desire to avoid unnecessary governmental intervention" and stated that "[p]lainly Congress intended to foster a situation in which the unions themselves could remedy as many election violations as possible without the Government's ever becoming involved." *Id.* at 339, 91 S.Ct. at 1845; *see also Wirtz v. Local Union No. 125, Laborers' International Union,* 389 U.S. 477, 484, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968); *Brennan v. Local Union 122, Amalgamated Clothing Workers,* 564 F.2d 657, 660 (3d Cir.1977). In *Hodgson,* the Court held that the failure of a union member to challenge a particular union rule through internal union channels during pursuit of an election protest barred the Secretary from later challenging that rule in an action under 29 U.S.C. § 482(b), notwithstanding the fact that the complainant had exhausted his remedies with respect to a different aspect of his election

protest. The Court reasoned that "[t]he obvious purpose of an exhaustion requirement is not met when the union, during 'exhaustion,' is given no notice of the defects to be cured." 403 U.S. at 340, 91 S.Ct. at 1846.

At the same time, however, the *Hodgson* Court emphasized that the exhaustion requirement is not to be applied inflexibly:

> Of course, any interpretation of the exhaustion requirement must reflect the needs of rank and file union members—those people the requirement is designed ultimately to serve. We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question.

403 U.S. at 340–41, 91 S.Ct. at 1846 (footnote omitted). What is necessary is that the union member "must, in some discernible fashion, indicate to his union his dissatisfaction with [the] facts [supporting the alleged violation]." *Id.* at 341, 91 S.Ct. at 1846.

Local 1235, in arguing that it was entitled to judgment as a matter of law on the exhaustion issue, seeks to distinguish *Hodgson* because it did not deal with failure to comply with a specific procedural requirement. However, in *Hodgson* itself the Court stated that just as the notice element should be flexibly applied in order to further the purposes of the Act, so too "members should not be held to procedural niceties while seeking redress within their union." *Id.* at 341 n. 6, 91 S.Ct. at 1846 n. 6. Similarly, in *Shultz v. Local 1291, ILA,* 429 F.2d 592, 597–98 (3d Cir.1970), we held that the filing of a complaint with the Local

president instead of with the Local secretary, as required by the union constitution, was sufficient. The 10-day time limit is no more absolute than these other requirements, and is to be applied in a similarly flexible . manner. Of course, flexibility must not be allowed to eviscerate the reasonable procedures, including time limitations, which unions are entitled to adopt in regulating their internal affairs.

 The Secretary suggests, and the district court apparently agreed, that a good faith effort to comply with the spirit of the exhaustion requirement is sufficient, even if technically deficient. We do not foreclose the possibility that a situation may arise in which exhaustion may be excused on that basis, but we cannot accept that position as a general proposition. Although the requirement to exhaust intra-union appeals has been criticized as generally meaningless, *see* Fox & Sonenthal, *Section 301 and Exhaustion of Intra-Union Appeals: a Misbegotten Marriage,* 128 U.Pa.L.Rev. 989 (1980) (in section 301 context), it has been imposed by Congress in LMRDA actions and it is to Congress to which such views must be directed. A rule excusing compliance simply on a showing of a good faith effort to comply, no matter how unreasonable the failure to do so, would eviscerate the exhaustion requirement. The Secretary has conceded in this case that the 10-day time limitation contained in the 1979 Constitution is reasonable; this being the case, the union is entitled to require that it be followed unless there is some othér basis to excuse its observance.[6]

 The Secretary argues that we can find such a basis from the union's failure to inform its members as to the procedural requirements of its internal remedies, which

he would have us hold excuses exhaustion as a matter of law. The statute and regulations on which he relies do not support such a sweeping position. They provide only that the union must make its constitution and bylaws "available" to its members. 29 U.S.C. § 431(c); 29 C.F.R. § 402.10. On the other hand, we do not accept the Local's similarly sweeping argument that the members' lack of knowledge of the internal requirements can never excuse exhaustion. While we agree that union members have an obligation to take reasonable steps to familiarize themselves with the requirements of their constitution, *see, e.g., Newgent v. Modine Manufacturing Co.,* 495 F.2d 919, 927–28 (7th Cir.1974), there is a correlative obligation by the union to make the constitution available when requested or when its officials have reason to know of a putative protest. *See Dorn v. Meyers Parking System,* 395 F.Supp. 779, 785–86 (E.D. Pa.1975) (if the intra-union procedures are not generally known to the membership, "the reason(s) therefor will be a factor to be considered in determining the necessity for exhaustion of the intra-union remedies").

Thus, although we hold that the mere failure to distribute the union constitution to the members at large or advise them of its provisions or that copies were available would not constitute failure by the union to comply with its obligations, in this case considerably more has been alleged. The Secretary contends that a request for the union constitution was made by one of the protestors which was nonetheless not supplied by Local officials.[7] The Secretary filed the affidavit of one of the protestors, Alonso, who stated that prior to the election he went to the Local's office, asked the secretary-treasurer, Canovas, "for a copy of

---

**6.** Although a good faith effort will not ordinarily excuse exhaustion, as we suggested in *Shultz* substantial compliance with the internal procedure may. 429 F.2d at 597–98. We do not consider that the record in this case fairly supports a contention of substantial compliance, and the district court did not base its decision on that theory.

**7.** In *Newgent,* relied on by the Local, the court noted that there was no contention by the member that the union had refused to provide him with a copy of the constitution. 495 F.2d at 928 n. 18. Also the court noted that the constitution there was a public document on file with the Secretary. *Id.* In this case the union did not file a copy of its constitution with the Secretary as required by law. 29 U.S.C. § 431(a).

the constitution and bylaws", but was told "that they didn't have any."

If, in fact, there was a timely attempt to secure the necessary information from Local 1235 and the Local failed to provide it, this could constitute a sufficient basis to excuse failure to comply with the technical election protest requirements. A corollary of the union member's obligation to become familiar with the provisions of the union constitution is the union's obligation to assist those members who make a good faith effort to ascertain its requirements. One of the principal purposes of the LMRDA was to cure undemocratic conduct of internal union affairs in matters such as union elections. *See* R. Gorman, *Labor Law* 6 (1976). That purpose would be defeated if the incumbent officials could frustrate and impede a member's attempt to ascertain the procedural requirements and then use those very requirements as a shield. Nor do we consider the fact that copies of the constitution were apparently available from the International sufficient to relieve the Local of its obligation to respond affirmatively in the face of a specific request by a union member. It was stipulated that Local 1235 had in fact received "some copies" of the 1979 Constitution. It is not unreasonable, in view of the statutory obligation to make the constitution and bylaws available to union members, to require the Local to keep on file copies of those documents which it must make available to its members upon request.

A second basis for finding that the Local failed to comply with its obligation to assist its members who seek to exhaust intra-union remedies would be if the union officials were aware or could have reasonably foreseen that a protest was contemplated and nonetheless failed to take steps to make information as to the relevant procedures available to the protestors. The district court stated that the union had been "aware at an early date of a protest yet never sought to inform its members of the procedure for filing a formal complaint." It was stipulated that both Local

president Cernadas and secretary-treasurer Canovas "knew on February 19, 1981 [the day of the voting], that Waldo Suarez, a member in good standing of Local 1235, objected to some retirees voting in the election at issue in this action." If Cernadas and Canovas were aware of the intention of Suarez or other union members to file a post-election protest, they would have had the obligation to take reasonable action designed to provide the necessary information about the procedure for filing a formal protest to the protestors. As we emphasized in *Shultz v. Local 1291:* "Members of a union, however well informed of its procedure for appeal, deal not with an outside agency whose interests are hostile to theirs but with their own union which should seek to reach a disposition of their grievances on the merits rather than on procedural technicalities." 429 F.2d at 598. Union officials must be discouraged from adopting with their own members the same adversarial role which they may more appropriately play when acting on behalf of those members in negotiations with their employer.

Therefore, if it was uncontested that a representative of the protestors timely requested a copy of the relevant union document which was not provided, or that the Local officials knew or could have foreseen that a timely protest was contemplated and nonetheless failed to provide the relevant information, summary judgment excusing exhaustion may have been appropriate. The Local contends there were disputed issues of mâterial fact which made summary judgment inappropriate. It contends that Alonso's affidavit does not support the Secretary's claim that he requested the International Constitution, which contained the election protest procedure necessary for exhaustion, but rather the Local Constitution, which contained no such procedure. It also contends that despite its failure to file any affidavit of its own to oppose Alonso's affidavit, the issue of whether Alonso made a request remained in dispute.

Under Fed.R.Civ.P. (56)(e), a party resisting a motion for summary judgment supported by affidavit "may not rest upon the

mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Local 1235 claims that it was not required to file a counter affidavit because questions regarding whether Alonso made any request and the response he received were listed as contested issues of fact in the pre-trial order. Since the Alonso affidavit was filed after the entry of the pre-trial order, Local 1235 was not entitled to rest on the stipulation contained in that order but was obliged to come forward with its own affidavit or deposition demonstrating a genuine issue of fact. However, because the existence of the pre-trial order may have made the nature of this obligation unclear, we believe it appropriate to remand to give the Local the opportunity to remedy this omission if it can. At the same time, the Secretary should be given the opportunity to clarify or supplement Alonso's affidavit, if he so wishes, in response to the Local's contention made on appeal as to the nature of Alonso's request.

Similarly, although it is stipulated that the Local officials knew of Suarez' objection to at least one aspect of the election procedure, the Local disputes the allegation that its officials knew that a protest was contemplated. We also note from the pre-trial order that the Local apparently contends that Canovas did advise the protestors of the 10-day requirement. These issues, *inter alia,* can also be met on remand.

■ Finally, even if it is found on remand, either on summary judgment or after trial, that the Local failed to meet its obligation to make the necessary information available to the protestors, exhaustion should only be excused if the protestors show that they acted reasonably[8] and that the Local's conduct was the cause of their failure to comply with the election protest requirements. As to reasonableness, a protestor would not be entitled to take no action to exhaust internal union procedures merely because the Local failed in its obligations. In this case, since it appears that the protestors filed their protest within the 30 days required under the earlier constitution, there is unlikely to be a legitimate factual issue in this regard, but we leave that decision to the district court in the first instance.

■ The issue of causation is less clear. For example, even if a request for a copy of the International Constitution was made and either rejected or deflected, or if Local officials knew or should have foreseen that an election protest was contemplated but nonetheless failed to make information about the applicable procedures available to the protestors, exhaustion would still not be excused if the protestors had independent knowledge of the requirements for an election protest. The pre-trial order lists as a contested fact whether the protestors had knowledge of the 10-day requirement. Further, Local 1235 contends that Suarez, as a delegate to the 1979 convention, was chargeable with knowledge of the amendments adopted there. Suarez's actual knowledge of the existence of the election protest amendment appears on this record to be another contested factual issue. If Suarez was or should have been aware of the amendment, the district court would then have to determine whether Suarez' actual or constructive knowledge can be attributed to the other protestors.[9]

---

8. For example, in *Brennan v. Local Union 122, Amalgamated Clothing Workers,* 564 F.2d at 660, we rejected the government's contention that "any notice whatsoever to union officials is sufficient to satisfy the exhaustion requirement." We stated, "If reasonably-available internal channels for processing grievances have been deliberately ignored, merely bringing the matter to the union's attention does not fully vindicate the public interest in encouraging responsive self-government on the part of unions."

9. In light of the Secretary's contention that the protestors had no knowledge of the relevant provisions, the failure to translate the constitution into Spanish, the language of 70% of the Local members, cannot possibly have been the cause of the late filing, and we express no opinion on the obligation, if any, to provide bilingual documents.

For the foregoing reasons, the judgment of the district court granting summary judgment for the Secretary is vacated, and the case remanded for further proceedings consistent with this opinion.