William D. HAMMONS, et al., Plaintiffs,

Jerome Alexander Durning and William D. Hammons, III, Plaintiffs-Appellants,

v.

Oscar ADAMS, et al., Defendants-Appellees.

No. 84–3628.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1986.
Rehearing Granted April 11, 1986.

J. Arthur Smith, III, Baton Rouge, La., for plaintiffs-appellants.

Blake & Uhlig, Joseph W. Moreland, Kansas City, Kan., for Int'l. Bros.

Gardner, Robein & Healey, Louis L. Robein, Jr., Metairie, La., for Boilermakers Local # 582.

Before RUBIN, RANDALL, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Two union members sued their international and local unions, the business agent of the local union, and a vice president of the international union for failing to provide fair representation and for violating the Labor Management Reporting and Disclosure Act. They contended that the union's business agent had discriminated against them in job referrals from a hiring hall run by the union under an agreement between it and local employers, and that both the international and local unions had breached their duty of fair representation by refusing to process the members' grievances in good faith.

We affirm the district court judgment dismissing the international union because that parent body was not responsible for the alleged discriminatory referrals or for the failure to process the grievances. The international union was not shown to be the employees' collective bargaining agent and is not vicariously liable for the acts of the local union or its business agent.

The judgment dismissing the suit against the local union and its business agent for the grievants' failure to exhaust internal union appeals is, however, reversed. The constitution of the international union did not provide its members with a remedial procedure for grievances of the kind here asserted, and, despite insistent inquiries, the grievants were not notified of any internal union remedies. A union member cannot be required to pursue a path that is not provided.

## I.

William D. Hammons Sr. and his son, William D. Hammons III, were members of Boilermakers Local No. 582, whose headquarters are in Baton Rouge, Louisiana. Hammons Sr.'s foster brother, Jerome A. Durning, was a member of the National Transit Division of the International Brotherhood of Boilermakers. All three were working out of a boilermakers' union hiring hall in Baton Rouge, Louisiana. Contending that they had been discriminated against in referrals to work, they sued the local union; its business agent, Oscar Adams; the international union; and an international vice-president, B.F. Falls. They asserted, *inter alia*, that both the local and the international unions were their collective bargaining agents and that each had violated the union's duty to represent them fairly. They contended that, in violation of the Labor Management Reporting and Disclosure Act,[1] Adams had refused to refer work to them and had attempted to have them fired from several jobs because they had opposed him in the last union election. The plaintiffs sought past and future lost wages, declaratory and injunctive relief, punitive damages and attorney's fees.

Although Hammons Sr. was a journeyman, Hammons III and Durning were classified by the union as subjourneymen because they had not worked for the 8,000 hours necessary for journeyman classification and had not enrolled in the apprenticeship training program. The two classified as subjourneymen contended both that the classification was improper and that, even if it were correct, other members who had no greater experience, were treated more favorably. The district court severed the claim of Hammons, Sr. from the claims of Hammons III and Durning.

The hiring hall was established in accordance with the terms of a collective bargaining agreement known as the South Central States Articles of Agreement executed between a group of employers doing field construction work in the South Central Area, comprised of Texas, Oklahoma, Arkansas, and Louisiana; the international union; and ten local boilermakers unions operating in that area, including Local 582. The Agreement provides that South Central Employers will employ boilermakers through union hiring halls operated in accordance with Local Joint Referral Rules. Pursuant to its provisions, Local 582 and two employer representatives executed Local Joint Referral Rules covering employment in the Baton Rouge area. The Rules require the local union to establish and maintain a non-discriminatory registry for qualified boilermakers and state the manner in which union members must register for work and be referred to jobs.

The Local Rules also establish a Local Joint Referral Disputes Committee to "hear and decide any and all disputes or grievances arising out of the operation of the job referral system." The Local Committee consists of an equal number of employer representatives, appointed by the Chairman of the Employers' Negotiating Committee, and union representatives appointed by the President of the International Boilermakers Union. Any employee with a grievance is required first to make an earnest effort to resolve his complaint with the local union business manager "who is responsible for the administration of the Local Joint Referral Procedures." If the matter is not satisfactorily resolved, the grievant may submit the matter for hearing by the Disputes Committee. Decisions rendered by the Committee are final and binding. If the Committee cannot agree, the grievance is submitted to binding arbitration. Neither the Articles of Agreement nor the Local Rules provide any avenue of appeal from actions by the Local Disputes Committee, either to the international union or to any other union or employer forums.

The international constitution contains a paragraph entitled Grievance Adjustment Procedure. Set forth in full in the foot-

---

1. 29 U.S.C. § 411 (1982).

note,[2] this requires "all grievances or disputes involving matters which are not the proper subject of disciplinary proceedings, including grievances or disputes within a Local Lodge or between Local Lodges, or between a District Lodge and a Local Lodge" to be submitted to the International President. Article XVII of the constitution also sets out in detail disciplinary procedures for union members who violate their union responsibilities. Unlike the grievance adjustment procedures, this section describes a method of resolution that begins with the local union and provides for an appeal to the Executive Council of the international union. Although Adams might have been reprimanded under this disciplinary procedure, it would not have permitted the plaintiffs to obtain the financial relief they seek.

At the Hammons III and Durning trial, the plaintiffs adduced evidence that their lawyer had written to Adams stating their grievances and calling on the union to fairly represent them. Copies of the letters were sent to the International President, whom Hammons, Sr. had previously telephoned and to whom he had written. Hammons III and Durning had also filed grievances and supplemental grievances with Adams for submission to the Local Joint Referral Disputes Committee. They testified that, when they delivered their written grievance and $50.00 deposit bond to Adams, as required to initiate a grievance by the Local Joint Referral Rules, he refused to accept the money, saying "Fuck you and your $50.00." Adams did, however, send notice of the grievances to the International President who appointed two union representatives to the Disputes Committee.

Joseph W. Guitreau, one of the employer representatives, was chairman of the Committee. Guitreau notified the three grievants of a hearing to be held on February 15, 1980. The four Committee members were present, as was Adams. The grievants appeared accompanied by their lawyer. Guitreau, however, objected to the presence of a lawyer, and refused to proceed with the hearing. Neither Adams nor the union-appointed members of the Disputes Committee objected, and the hearing was cancelled. Thereafter, counsel for the plaintiffs twice wrote Guitreau to ask when the hearing would be rescheduled, sending copies of the letters to the union-designated representatives on the Committee, although not to Adams or the International President. No one responded to the letters and, so far as the record discloses, the international officers, the union-appointed representatives, and the Disputes Committee did nothing to seek a hearing, to communicate with the grievants, or to prosecute the grievances.

When the plaintiffs rested their case on the third day of trial, the defendants moved for a directed verdict on the ground that the plaintiffs had failed to exhaust all of the internal union and contractual remedies available to them. The international union, in addition, contended that it had not been the plaintiffs' collective bargaining agent, it was not vicariously liable for the actions of the local union and Adams, and it was not independently liable under the Labor Management Reporting and Disclosure Act. The district court granted a directed verdict in favor of the international union and, the next day, directed verdict for the local and Adams as well. The district court held that the evidence that the hiring hall had been operated in a discriminatory fashion was sufficient to warrant submitting the case to the jury. Without deciding expressly whether or not the union constitution provided any remedy for this kind of

2. § 7 of Art. V of the international constitution states:

 All grievances or disputes involving matters which are not the proper subject of disciplinary proceedings, including grievances or disputes within a Local Lodge or between Local Lodges, or between a District Lodge and a Local Lodge, if not settled within thirty (30) days of the original occurrence of the grievance or dispute, within the next fifteen (15) days may be submitted for adjustment to the International President who, or his designee, shall investigate and resolve the matter, subject to appeal within thirty (30) days, by registered or certified mail, to the Executive Council whose decision shall be final.

grievance, and, if so, whether the remedy was adequate, the district court held that the motion should be granted because, although the plaintiffs had exhausted their remedies under the Local Rules, they had not exhausted their international constitutional remedies.

## II.

We summarize settled law. The National Labor Relations Act,[3] as interpreted by the Supreme Court, imposes upon the union that acts as an exclusive bargaining agent a duty to act fairly toward all the employees it represents,[4] including those who, unlike the grievants, are not union members.[5] Breach of that duty is an unfair labor practice,[6] violating Section 8(b) of the National Labor Relations Act,[7] and it may be the basis of a suit against the union under Section 301 of the Labor Management Relations Act.[8]

The standards for determining what constitutes the union's duty of fair representation have not yet been fully defined,[9] but that duty clearly includes the obligation to enforce collective bargaining agreements and to prosecute members'

grievances arising under them nonarbitrarily and in good faith.[10] The union has a duty of "complete loyalty to the interests of those whom it represents,"[11] and, while its responsibilities permit the exercise of judgment within a wide range of reasonableness, it is "subject always to complete good faith and honesty of purpose in the exercise of its discretion."[12] As the Supreme Court said in *Vaca v. Sipes*, fair representation does not require a union to carry every grievance to arbitration, for the union is given substantial discretion to decide whether and how far a grievance should be pursued.[13] Its conduct, however, must not be "arbitrary, discriminatory, or in bad faith;"[14] a standard that has since been repeated by the Court with only minor rephrasing.[15]

Hostility to the represented employee by the union or its business agent indicates want of fair representation.[16] When the union represents an employee in handling his grievance, it must make a good faith effort to plead his case in more than a perfunctory manner.[17] If the union officer who ordinarily would prosecute the grievance has a conflict of interest, the

3. 29 U.S.C. § 159(a) (1982).

4. *See, e.g., Wallace Corp. v. NLRB*, 323 U.S. 248, 255, 65 S.Ct. 238, 241–42, 89 L.Ed. 216 (1944); *see also Steele v. Louisiana & Nashville R.R. Co.*, 323 U.S. 192, 202, 65 S.Ct. 226, 231–32, 89 L.Ed. 173 (1944).

5. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

6. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967).

7. 29 U.S.C. § 158(b) (1982).

8. 29 U.S.C. § 185(a) (1982).

9. Vandervelde, A Fair Process Model for the Union's Fair Representation Duty, 67 Minn.L. Rev. 1079, 1084 (1983).

10. *Vaca v. Sipes*, 386 U.S. 171, 194, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

11. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

12. *Id.*

13. 386 U.S. 171, 191–92, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 842 (1967).

14. *Id.*

15. *See, e.g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563–64, 571, 96 S.Ct. 1048, 1056, 1059, 47 L.Ed.2d 231 (1976); *Amalgamated Ass'n of Steel Elec. Ry & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971).

16. *Hughes v. International Bhd. of Teamsters*, 554 F.2d 365 (9th Cir.1977); *N.L.R.B. v. Int'l Union of Electrical, Radio & Machine Workers*, 454 F.2d 17 (2d Cir.1972); *Williams v. Pacific Maritime Association*, 384 F.2d 935 (9th Cir. 1967), *cert. denied*, 390 U.S. 987, 88 S.Ct. 1181, 19 L.Ed.2d 1290 (1968).

17. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976); *Lowe v. Pate Stevedoring Co.*, 558 F.2d 769, 771 n. 2 (5th Cir.1977); *Hughes v. International Bhd. of Teamsters*, 554 F.2d 365 (9th Cir. 1977); *Miller v. Gateway Transportation Co.*, 616 F.2d 272 (7th Cir.1980).

union must provide a representative whose duty to the grievant is undiluted. The union is, at a minimum, the agent of a member grievant and, like any other agent, must act as a loyal and diligent fiduciary with respect to matters within the scope of its agency.[18]

Hammons III and Durning made a prima facie case of breach of the union's duty to represent them. Neither Adams, nor Falls, nor anyone else speaking for the union made the slightest effort to represent them at the hearing or to reschedule it. Instead of representing the grievants at an impartial hearing, the union resisted their complaints and, after refusing to proceed with the hearing because a lawyer was present, it abandoned the grievants altogether.

The grievants do not contend that they had a right to be represented either by a union-appointed lawyer or by their own lawyer at the hearing. They assert only that they had a right to have their lawyer present. Whether or not that is correct, we need not here decide.[19] The union had a duty as the boilermakers' exclusive collective bargaining agent, to ensure that they were fairly represented and that their properly lodged grievance was processed through the contractual grievance machinery to a good faith resolution. It offered no advocate for their cause and no representative in lieu of their lawyer.

Adams and the local union assert blandly that the grievants have forfeited their rights because their lawyer did not send to them copies of the letters sent to Guitreau and to the union representatives on the Disputes Committee. This argument would put the legal duty to process a grievance on the shoulders of the victims. That duty, however, rests on the union, which must prosecute a grievance or refuse for adequate reason to do so. It was the union's duty to provide representation for its mem-

bers, to see that the hearing was reconvened, and to prosecute their grievances with reasonable diligence unless it decided in good faith that the grievances lacked merit or for some other reason should not be pursued.

### III.

After the Local Committee had failed to hear their grievance concerning the operation of the hiring hall, Hammons III and Durning had two complaints: their contractual grievance that Adams violated the collective bargaining agreement in the operation of the hiring hall, and their dispute with the union arising from its alleged failure to prosecute their contractual grievance.

In *Clayton v. International Union, UAW,*[20] the Supreme Court stated the governing rule: an employee alleging that his union has breached its duty of fair representation in processing his grievance, must, before filing suit, attempt to exhaust the internal union appeals procedures established by the collective bargaining agreement and his union's constitution. He is excused from doing so only if that procedure cannot result in reactivation of the grievance or in an award of the complete relief he seeks. If, however, the union constitution does not provide a procedure whereby his grievance concerning breach of a local union's duty of fair representation may be heard and adequately remedied, there is nothing to exhaust. Absent an internal union remedy, the employee may proceed to file suit after pursuing his contractual remedies as far as possible.

The grievants in this case established at least a prima facie case that the international union constitution did not provide any remedy for either of the griev-

---

**18.** Restatement of Agency 2d §§ 12, 387.

**19.** *Compare Castelli v. Douglas Aircraft Company,* 752 F.2d 1480, 1483 (9th Cir.1985) *with Seymour v. Olin Corp.,* 666 F.2d 202 (5th Cir. 1982).

**20.** 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

ances they asserted, the contractual violation or the duty of fair representation. In the absence of further evidence, we do not attempt definitively to interpret the constitutional grievance adjustment clause. At least on its face, it appears to refer to internal union matters, not to remedies for violation of a collective bargaining agreement or to a local union's failure to fulfill its obligations to the employees it represents. The contractual grievance procedures of the local union are described as final and binding, without mention of any prior or later appeal to the international union.

Before the hearing, the grievants' attorney twice wrote Adams asking, "in addition, please advise us what internal or administrative remedies are available in addition to the filing and processing of this grievance. If we do not hear from you in this connection, we will presume that there are no others." Copies of these letters were sent to the International President and the local President. No one responded, either before or after the Disputes Committee's refusal to hear the grievances. It is unnecessary for us to decide now whether the union representatives had a duty to step forward and guide the dissident union members, or to lodge complaints with the international union on their behalf, for the union's silence, combined with the absence of any relevant provisions in the international constitution, and the apparent finality of the Disputes Committee's decisions, all indicate the absence of any further remedy.

The district court found only that the grievants had not submitted their complaints to the International President after the Local Committee had adjourned. It stated that, after receiving no response to their requests for a new meeting date and from communications with the International President or his agents, they should have formally submitted their grievance to the International President by bringing to his attention the fact that the committee was refusing to meet and resolve the grievance. The district court did not find, and the evidence did not warrant a finding, that such an appeal under the international constitution would offer a remedy that might result either in reactivating the grievance or in awarding Hammons III and Durning the relief they sought.

In *Clayton,* unlike this case, the lower court had found the union's procedures fair and reasonable, and this finding was not challenged on appeal. Similarly, the constitutional provision considered by us in *Hayes v. Brotherhood of Railway and Airline Clerks* [21] clearly established that there was a procedure whereby the employee-union member could appeal the union inaction on his grievance, and the union had notified the member in writing of his remedies.

We conclude that, on the record before the district court, the grievants had established the absence of any further redress within the union and, therefore, the suit against the local union should not have been dismissed.

## IV.

 The Labor Management Reporting and Disclosure Act, on which the suit against Adams was based and in reliance on which the union was also sued, authorizes a civil action [22] but also permits the district court in its discretion to require exhaustion of reasonable hearing procedures within the union. [23] As we noted in *Hayes,* we have not yet decided whether this exhaustion requirement applies in section 301 actions. [24] Even if we assume the applicability of that requirement, however,

---

**21.** 734 F.2d 219 (5th Cir.1984); *see also Miller v. General Motors Corp.,* 675 F.2d 146 (7th Cir. 1982).

**22.** 29 U.S.C. § 412 (1982).

**23.** 29 U.S.C. § 411(a)(4) (1982).

**24.** 734 F.2d at 221.

it does not bar this action. The Act does not itself create an internal union remedy; it merely protects whatever provision the union has itself made.[25] If a grievant inquires in good faith about what grievance resolution procedures are available, it is the union's duty to inform him of those procedures.[26] Where the remedies are vague or uncertain, as in this case, and where the union has not made them known and available to the grievant, the union cannot protest that he has failed to exhaust its internal remedies.[27] The union has a duty to assist its members in exhausting the remedies it provides. Under the LMRDA, as under the National Labor Relations Act, the union member may be required only to seek remedies that are available and effective. He need not pursue a futile procedural path through a trackless jungle.[28]

The absence of further redress by internal union procedures for the claim under the Labor Management Reporting and Disclosure Act requires us to set aside the judgment against Hammons III and Durning on this count. Hammons III and Durning have not, however, raised any issue on appeal about the judgment in favor of B.F. Falls and the summary judgment in his favor is therefore affirmed.

## V.

 The grievants do not and could not contend that the international union is vicariously liable for the acts of the local union or its business agent.[29] Instead, they assert that it was their collective bargaining agent in addition to the local union, and, as such, it violated the duty of fair representation and its obligations under the union constitution.

The international union is composed of 600 local unions and has a total of 150,000 members. Local Lodge 582 is an autonomous local union. Together with ten other local unions in the South Central states and the international union, Local 582 participated in negotiating the South Central States Articles of Agreement with employers doing business in the area. The union's negotiating committee consisted of the business managers of the eleven locals, Baton Rouge, Louisiana; New Orleans, Louisiana; Lake Charles, Louisiana; Little Rock, Arkansas; Tulsa, Oklahoma; Fort Worth, Texas; Houston, Texas; Lamarque, Texas; Amarillo, Texas; Corpus Christi, Texas; and Orange, Texas, B.F. Falls, a vice-president of the International and chairman of the bargaining committee; and Larry Roberts, a representative of the construction division of the international union. All decisions made with respect to the terms and conditions of the agreement were made solely by a majority vote of the eleven business manager members of the committee. Falls served as chairman of the committee, and Roberts as its secretary, but neither had a vote on the acceptance or rejection of any of the contract terms.

In addition to negotiating and administering the area construction agreements, local unions such as Local 582 represent employees in railroad and boiler manufacturing industries. They negotiate local agreements for those constituents who are employed in local shops. The Local Joint Referral Rules provide that Lodge No. 582 shall retain control over the hiring hall

**25.** *Rizzuto v. Western Conference of Teamsters Pension Trust,* 573 F.2d 552, 554 (9th Cir.1977).

**26.** *Donovan v. Longshoremen's Ass'n,* 715 F.2d 70, 75–76 (3d Cir.1983).

**27.** *Id.*

**28.** *Cf. Stein v. Mutuel Clerks' Guild of Massachusetts, Inc.,* 560 F.2d 486 (1st Cir.1977); *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir.), *cert. denied,* 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961); *Robinson v. Marsh Plating Corp.,* 443 F.Supp. 811 (D.C.Mich.1978). See generally Fox & Sonenthal, Section 301 and Exhaustion of Intra-Union appeals: A Misbegotten Marriage, 128 U.Pa.L.Rev. 989 (1980).

**29.** *See, e.g., Shimman v. Frank,* 625 F.2d 80, 97 (6th Cir.1980); *Barefoot v. International Bhd. of Teamsters,* 424 F.2d 1001 (10th Cir.1970), *cert. denied,* 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1971).

operation and over grievances regarding its operation.

As we have noted, the Articles of Agreement were signed both by the international union and each local. The fact that the international union signed the agreement does not make it either vicariously liable for the acts of the local or establish it as the collective bargaining agent.[30] The evidence justifies the conclusion that, in its area, each local union bargains collectively with local employers, administers the Articles of Agreement, and operates the local hiring hall. There is no evidence that the international union has ever represented local employees in administration of the hiring hall or has usurped the autonomy of Local 582. The record fully supports the district court's conclusion that "there is no evidence that a reasonable jury could accept in this case that would result in liability on the International Union."

The grievants contend that the international union owed them an independent duty to respond to their grievances and that it violated that duty. The grievants did not, however, ask the international union to resolve their grievances. The correspondence with the international union by Hammons Sr. related only to his complaints and was offered "to show the problems that were being had," not to request a resolution. The later correspondence between the lawyer for Hammons III and Durning did not ask the International President to do anything on their behalf. Further, the union constitution, as the grievants urged and as we have found, established no procedure for the resolution of members' grievances.

For these reasons, (1) the judgment is REVERSED as to Local 582 and Adams, and the case is REMANDED for further proceeding against them consistent with this opinion; (2) the judgment dismissing the international union and Falls is AFFIRMED.

---

**30.** *See Boss v. International Bhd. of Boilermakers, Etc.,* 567 F.Supp. 845 (N.D.N.Y.1983), *aff'd mem.,* 742 F.2d 1446 (2d Cir.1984). *Cf. Alexander v. International Union of Operating Engineers, AFL–CIO,* 624 F.2d 1235 (5th Cir.1980); *see also Carbon Fuel Co. v. United Mine Workers,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979).